J-S37022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGEL RIVIERA | : | |
| | : | |
| Appellant | : | No. 2269 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000348-2021

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 18, 2024**

Angel Riviera (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of rape of an unconscious person and sexual assault.[1] We affirm.

On February 8, 2021, the Commonwealth filed a criminal information charging Appellant with, *inter alia*, the above offenses. On May 27, 2021, the Commonwealth filed a motion seeking admission of evidence of Appellant's other crimes, pursuant to Pa.R.E. 404(b) (404(b) Motion).[2] On July 28, 2021,

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(3), 3124.1.

[2] In July 2013, Appellant entered a guilty plea to indecent assault of an unconscious person, 18 Pa.C.S.A. § 3126(a)(4), and corruption of minors, 18 Pa.C.S.A. § 6301(a)(1)(i) (the 2013 case). With respect to the instant case, the Commonwealth argued it bore significant similarities to the 2013 case,

*(Footnote Continued Next Page)*

the trial court granted the Commonwealth's 404(b) Motion over Appellant's objection.[3]

The matter proceeded to a jury trial on August 5, 2021. The trial court summarized the testimony adduced at trial as follows:

> In March 2020, [A.O. (Complainant)] … was going to meet her friend, Claire,[4] on Front and Wishart Streets in Philadelphia. While walking with Claire on Front Street, they both stopped because [Appellant] was trying to get Complainant's attention. [Appellant], who was in a car on the driver[']s side, kept calling to [Complainant] and asking whether she remember[ed] him. [Alfredo Rodrigeuz Centron (Centron), Appellant's brother, was in the passenger seat of the vehicle.] … [Appellant] asked Complainant what she was doing. [Complainant] told [Appellant] that she was going to get something to smoke, which was PCP. … [Appellant] offered to give [Complainant] money for [the PCP]. [Appellant] then exited his vehicle, and took [] $20.00 from the trunk of his car to give to Complainant. Before giving Complainant the money for the PCP sticks, [Appellant] never once asked for sexual favors in exchange for the money given to Complainant for the PCP. … Once she bought the PCP sticks, she and Claire returned to [Appellant] because[,] prior to buying the PCP, [Appellant] asked whether Complainant wanted to take a ride with him to see a friend.[5] Once she and Claire returned, Complainant asked whether Claire wanted to go with her to take a ride with

_____

*i.e.*, Appellant "sexually assault[ed] his victims by initiating contact, forcing or facilitating the consumption of narcotics until the victim f[ell] asleep, and penetrating the victim's vagina with his penis while she sle[pt]." 404(b) Motion, 5/27/21, at 7 (some capitalization modified).

[3] Appellant does not challenge the admission of Rule 404(b) evidence on appeal.

[4] Complainant testified that she did not know Claire's surname. *See* N.T., 8/5/21, at 96. Claire's surname does not otherwise appear in the certified record.

[5] Appellant's friend is not identified in the trial transcript.

[Appellant] and his [Centron]. Claire stayed behind and did not join Complainant[,] as she did not want to go.

After driving to see [Appellant's] friend, [Appellant] took Complainant and [Centron] back to [Centron's apartment, where Appellant resided]. Once in [Appellant's bedroom, Appellant] and Complainant decided to sit on the side of the bed, watch television, and start smoking. Complainant smoked PCP, and she allege[d] that [Appellant] smoked [marijuana and synthetic marijuana]. Before spending the night in [Appellant]'s room, [Appellant] took Complainant to gather some items at her residence[,] which consisted of food and more PCP. Once back at [Appellant]'s residence, Complainant told [Appellant] that they were going to lay back-to-back on the bed. Prior to going to sleep, Complainant had clothes on. However, when she woke up, Complainant witnessed [Appellant] on top of her with his [penis] inside of her[ vagina,] and her clothes were removed from the waist down. … Complainant pushed [Appellant] off of her, [and] she started yelling at him asking what [he was] doing, and how [he would] feel if someone did this to the women in [Appellant]'s life. [Centron], who was laying down on an air mattress during the event, ran out of the room once Complainant … started to argue with [Appellant]. Complainant then called her mother to tell her what happened and [asked her] mother to pick her up.

Once Complainant was able to leave the residence, [Appellant] ran off and started to run towards his car. However, once Complainant started to go towards [Appellant]'s vehicle, [Appellant] ran in the opposite direction. While standing at [Appellant]'s vehicle, Complainant called 911 and gave a description of [Appellant]'s car and the neighborhood she was in. Once the officers arrived, Complainant explained to the officers what transpired and showed them [Appellant]'s residence. Complainant indicated that she was beside [Appellant]'s car, but [Appellant] ran away. As Complainant was explaining to the officers [] what transpired, the officers noticed that she was visibly upset, crying, and had a [difficult] time getting her words together. She also had scratches on her hand. After speaking with the officers, she was taken in for a physical exam.

Complainant's sexual assault nurse examiner, Shawna Delorie[ (Ms. Delorie)], testified … that Complainant was cooperative, coherent, and seemed to be able to answer her questions appropriately. [Ms. Delorie] also witnessed

- 3 -

Complainant's sweatpants were inside[-]out. [T]he description Complainant gave of the person who committed the assault was a Hispanic male, with black and slight white hair. [] Complainant later identified [Appellant] as the assailant in a photo array[,] as well as [during her testimony at trial]. Ms. Delorie affirmed Complainant's testimony that Complainant claim[ed] that she smoked PCP and that her pants were removed once she had awakened. However, Complainant had no memory of the sexual assault, and she was not able to tell Ms. Delorie whether she was physically penetrated. Complainant was also unsure whether a condom or lubricant was used, and when she awakened, she did not have specific memory of seeing a condom wrapper or a condom anywhere. However, Complainant believed ejaculation occurred because she felt wetness in her vaginal area and noticed wetness on her pants. Based on Complainant's statements, Ms. Delorie performed eight swabs to help lift any DNA, [preventatively] treated Complainant with antibiotics for certain [sexually transmitted infections], and collected her clothing and a tissue that Complain[ant] used to wipe her vaginal area because of the wetness she felt when she woke up. When questioned about her observations of Complainant, Ms. Delorie stated Complainant told her that she felt dirty and became tearful at one point during the examination.

Once the physical exam was completed, the results were analyzed and put into a DNA report by forensic scientist, Craig Judd[ (Mr. Judd)]. … [T]hree of the samples detected a male source [of] DNA. … [T]he results [were] submitted to a database search … [which revealed] a [DNA] match to [Appellant]. … Due to the database results, [Appellant] was arrested and taken into custody.

Trial Court Opinion, 12/5/23, at 1-4 (record citations omitted; footnotes and one paragraph break added).

The jury returned guilty verdicts on the above-described charges on August 10, 2021. The trial court deferred sentencing for the preparation of a presentence investigation report (PSI) and mental health evaluation. On April 27, 2023, following numerous continuances irrelevant to the instant appeal,

the trial court sentenced Appellant to an aggregate six to twelve years in prison, followed by four years' probation.[6]  On May 7, 2023, Appellant filed a timely post-sentence motion challenging, *inter alia*, the sufficiency and weight of the evidence, and the discretionary aspects of the trial court's sentence. *See* Post-Sentence Motion, 5/7/23, at 1-2 (unpaginated).  On August 3, 2023, the trial court denied Appellant's post-sentence motion.  Appellant timely appealed, and timely filed a court-ordered concise statement of errors complained of on appeal.  The trial court authored an opinion pursuant to Pa.R.A.P. 1925(a).

> Appellant presents the following issues:
>
> 1.   Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which [A]ppellant was convicted[?]
>
> 2.   Whether the jury verdict was against the weight of the evidence[?]
>
> 3.  Whether [A]ppellant's limited intellectual capacity significantly diminished his ability to comprehend and understand the charges against him and rendered him incompetent to stand trial[?]
>
> 4.   Whether the sentencing court abused it[]s discretion by imposing a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of [A]ppellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S.[A. §] 9721 of the Sentencing Code[?]

Appellant's Brief at 8 (issues reordered).

---

[6] It is undisputed that the trial court imposed sentences below the mitigated sentencing guideline ranges for both offenses.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions. *See* Appellant's Brief at 16. However, Appellant's sufficiency claim merely attacks Complainant's credibility. *See id.* at 16-17 (Appellant arguing purported contradictions between Complainant's and Ms. Delorie's testimony undermined Complainant's credibility).

We observe,

[t]he distinction between [sufficiency and weight] challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Commonwealth v. Rivera*, 238 A.3d 482, 495 (Pa. Super. 2020) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000)). "A true weight of the evidence challenge concedes that sufficient evidence exists to

sustain the verdict **but questions which evidence is to be believed**."
***Commonwealth v. Lewis***, 911 A.2d 558, 566 (Pa. Super. 2006) (emphasis added; citation omitted).

In his sufficiency claim, Appellant does not identify any element of an offense for which the Commonwealth's evidence was insufficient. Instead, Appellant argues that (1) Complainant's admitted PCP use impacted her memory; (2) Ms. Delorie's testimony contradicted Complainant's testimony that Complainant recalled portions of the sexual assault; and (3) it is more likely that Complainant fabricated the sexual assault, and that the sexual intercourse was consensual. ***See*** Appellant's Brief at 17.

Appellant's challenge goes to the weight, not the sufficiency of the evidence. ***See Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa. Super. 2022) ("[A] sufficiency of the evidence review does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such arguments are more properly characterized as challenges to weight of evidence." (citation omitted)); ***Commonwealth v. Trinidad***, 96 A.3d 1031 (Pa. Super. 2014) (explaining that "variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence"). Our Supreme Court has concluded that an "appellant's challenge to the sufficiency of the evidence must fail" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence. ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999);

*see also Commonwealth v. Martin*, ___ A.3d ___, 2024 PA Super 197, 16*
(Pa. Super. filed Oct. 16, 2024) ("An argument that goes purely to weight,
even if styled as sufficiency, necessarily fails." (citation omitted)).
Accordingly, Appellant's sufficiency claim lacks merit.

In his second issue, Appellant challenges the weight of the evidence
supporting his convictions.[7] Our standard of review concerning challenges to
the weight of the evidence is well settled:

> A verdict is not contrary to the weight of the evidence
> because of a conflict in testimony or because the reviewing court
> on the same facts might have arrived at a different conclusion
> than the fact finder. Rather, a new trial is warranted only when
> the jury's verdict is so contrary to the evidence that it shocks one's
> sense of justice and the award of a new trial is imperative so that
> right may be given another opportunity to prevail. Where, as
> here, the judge who presided at trial ruled on the weight claim
> below, an appellate court's role is not to consider the underlying
> question of whether the verdict is against the weight of the
> evidence. Rather, appellate review is limited to whether the trial
> court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying
> a new trial is the lower court's determination that the verdict was
> or was not against the weight of the evidence and that new
> process was or was not dictated by the interests of justice. Thus,
> only where the facts and inferences disclose a **palpable abuse of
> discretion** will the denial of a motion for a new trial based on the
> weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (internal citations
and quotation omitted; emphasis in original). Further, "the fact-finder is free

---

[7] Appellant preserved this issue, as required by Pa.R.Crim.P. 607, by raising
it with the trial court in a post-sentence motion. *See* Post-Sentence Motion,
5/7/23, at 2 (unpaginated).

to believe all, part, or none of the evidence and to determine the credibility of the witnesses[.]" **Commonwealth v. James**, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

Instantly, the trial court explained:

It is clear through the testimony that Complainant did not want to engage sexually with [Appellant], that intercourse occurred, and [] Complainant was unconscious. Moreover, the [Superior] Court has [stated] that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." **Commonwealth v. Castelhun**, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citation omitted). Thus, due to the evidence presented, it is clear that the verdict does not shock "one's sense of justice" as there was more than enough evidence for the jury to find beyond a reasonable doubt that [Appellant] committed rape of an unconscious victim and sexual assault against Complainant.

Trial Court Opinion, 12/5/21, at 11-12 (citation and some capitalization modified). We agree with the trial court's assessment.

At trial, Complainant testified that Appellant approached her, engaged her in conversation, and offered to supply her with funds to procure PCP. **See** N.T., 8/5/21, at 65-67. Prior to falling asleep at Appellant's residence, Complainant and Appellant agreed to lay facing away from each other, and at no point did Complainant consent to sexual activity. **See id.** at 76; **see also id.** at 118 (Complainant testifying, "I told [Appellant] that he was not allowed to touch me[, and] that I was going to go to sleep [].”). After falling asleep, Complainant awoke to find her pants and underwear had been removed, and Appellant had crawled atop her. **See id.** at 83-84. Appellant's penis was inside of Complainant's vagina, and Complainant felt "wetness" in her vaginal

area as she struggled to push Appellant away from her. *See id.* at 84-85. After pushing Appellant away from her and expressing her anger concerning this sexual violation, Complainant called her mother, "telling her what was going on." *Id.* at 88. Complainant then immediately called police and provided a detailed description of Appellant's vehicle, causing Appellant to flee on foot. *See id.* at 91.

Ms. Delorie testified that, in the course of her examination of Complainant, she observed that Complainant was wearing her pants inside-out. *See id.* at 139. Complainant related to Ms. Delorie that she did not recall the physical assault, but "she woke up and [Complainant] found that [Appellant] was on top of her, so she didn't have a specific recollection of coercion or force being used." *Id.* at 140. Based upon Complainant's answers to her questions, Ms. Delorie used DNA swabs on various areas of Complainant's body. *See id.* at 150-51. Although Complainant did not tell Ms. Delorie that she awoke to Appellant's penis inside of her vagina, *see id.* at 155, Mr. Judd testified that his forensic analysis showed Complainant's cervical swab tested positive for Appellant's DNA. *See* N.T., 8/6/21, at 61-61.

It was within the sole province of the jury to determine the weight of this evidence, resolve conflicts in the testimony, and assess credibility. *See* ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017). Here, "the evidence [was not] so tenuous, vague and uncertain that the verdict shocks

the conscience of the court." ***Martin***, 2024 PA Super 197, 16* (quoting

***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2016)).

Appellant's second issue does not merit relief.

In his third issue, Appellant argues that he "should have been evaluated to determine the extent of his cognitive limitations, and his competency to stand trial should have been determined." Appellant's Brief at 14. Appellant contends the trial court was "obligated to hold a [competency] hearing" because a "*bona fide* doubt" regarding his competence arose during the pendency of his case. ***Id.*** (citing ***Drope v. Missouri***, 420 U.S. 162 (1975)). However, Appellant concedes "the record is silent as to whether a *bona fide* doubt arose regarding his competence during pretrial motions or the colloquy on the waiver of his right to testify in his own defense[.]" ***Id.*** Appellant maintains, nevertheless, that the trial court erred by not *sua sponte* ordering a competency evaluation based on evidence of Appellant's poor academic history:

> The academic record from the School District of Philadelphia was included in the [PSI] associated with [the 2013 case]. [T]he information contained in the record was available to the trial court and all counsel prior to the trial in the instant case. A review of that record indicates that [A]ppellant received special education instruction throughout his academic career and did not successfully complete high school. … [Appellant's] academic results, despite the extra attention provided by the special education instruction, demonstratively establish [A]ppellant's limited intellectual ability and diminished cognitive functioning. Based on his limited intellectual capacity, as documented by the academic report included in the prior [PSI], the trial court should have conducted a competency evaluation to ensure [A]ppellant's ability to stand trial.

*Id.* at 15.

> The Commonwealth counters,
>
> [Appellant's] poor educational history, on its own, does not meet the standard to find him incompetent. Rather, the test for incompetence focuses on [Appellant's] ability to consult with counsel and understand the proceedings at this specific trial. *See Commonwealth v. Blakeney*, 108 A.3d 739, 752 (Pa. 2014) ("Competency to stand trial is measured by the relationship between counsel and client."). [Appellant's] high school academic performance[,] therefore[,] is not sufficient for a finding that he was incompetent, as it does not demonstrate that he had an inability to understand the proceedings against him. Furthermore, any concern about [Appellant's] competence arising from poor academic performance is mitigated, if not completely eliminated, by his confirmation that he's obtained a GED. N.T., 8/9/21, at 25. Therefore, [Appellant's] claim that he was incompetent to stand trial, even if he had made a *prima facie* showing before the court, would have been meritless.

Commonwealth Brief at 8-9 (citations modified). Significantly, Appellant does not assert that he was incompetent to stand trial; rather, he argues the evidence of his poor academic performance *obligated the trial court* to make further inquiry into his competency.

We evaluate the trial court's failure to order a competency evaluation for an abuse of discretion. *See Commonwealth v. Mayer*, 685 A.2d 571, 572 n.1 (Pa. Super. 1996) (finding the advisory nature of 50 P.S. § 7402(d) ("the court … may order an incompetency examination…."), indicates our review is for an abuse of discretion); *see also id.* ("[T]he legislature's use of the word 'may' indicates that an abuse of discretion standard is to be used in

evaluating a trial court's action or inaction under the statute." (citation omitted)).

The Mental Health Procedures Act defines incompetence as follows:

**(a) Definition of Incompetency.--**Whenever a person who has been charged with a crime is found to be **substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense**, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a) (emphasis added). "The court, either on application or on its own motion, **may** order an incompetency examination at any stage in the proceedings …." *Id.* § 7402(d) (emphasis added).

"A defendant is presumed to be competent to stand trial." *Commonwealth v. Brown*, 872 A.2d 1139, 1156 (Pa. 2005) (citation omitted). However, "a conviction of an accused person while he is legally incompetent violates due process." *Mayer*, 685 A.2d at 572 (brackets and citation omitted). "To be deemed competent, the defendant needs to have the ability to consult with counsel with a reasonable degree of understanding, in order to participate in his defense, and he must be able to understand the nature or object of the proceedings against him." *Blakeney*, 108 A.3d at 752. "When a defendant is incompetent to stand trial, a problem of constitutional dimensions exists." *Commonwealth v. Smith*, 324 A.2d 483, 488 (Pa. Super. 1974). Consequently, "[i]nquiry is [] wise whenever there arises from the evidence, no matter how presented to the trial judge, a reasonable doubt that the defendant is competent to stand trial." *Id.* (citing *Pate v. Robinson*,

- 13 -

383 U.S. 375 (1969)); *see also* 50 P.S. § 7402(d) ("[A]n examination shall be ordered only after determination upon a hearing that there is a *prima facie* question of incompetency.").

In its Rule 1925(a) opinion, the trial court concluded that neither the evidence, nor Appellant's behavior, gave the trial court reason to question Appellant's competency:

> There was nothing in [Appellant's PSI] and mental health report that [] mention[ed] that [Appellant] ha[d] limited intellectual capacity to comprehend or understand his charges. [W]hen asked how [Appellant wished to plead prior to trial, Appellant] pled [not] guilty to both charges. [D]uring his colloquy of whether or not [Appellant] wanted to take the stand, he elected not to testify and [stated] that he understood he had the absolute right to testify on his behalf…. Further, [Appellant] was asked whether he had a conversation with his counsel about testifying, and [whether] he understood[,] regardless of his counsel's advice, the decision [of whether to testify was] ultimately his own; [Appellant] answered in the affirmative. Moreover, … [Appellant] was asked if there was anything more he needed to discuss with his counsel or any questions that he ha[d] concerning his decision not to testify; [Appellant] responded in the negative. Additionally, after the questioning was completed, th[e trial] court asked [Appellant] whether he was satisfied with his [counsel's] representation[, and Appellant] responded yes. If [Appellant] truly had issues with his [] counsel and his ability to aid in his own defense, he could very well ha[ve] voiced those concerns during his colloquy. Thus, [Appellant] was clearly competent to stand trial as there was nothing in his reports that stated otherwise.

Trial Court Opinion, 12/5/23, at 8-9 (record citations omitted).

The trial court's findings are supported by the record, and its legal conclusion is sound. The question of competence turns on a defendant's ability to understand the nature of the proceedings against him, and to participate in his defense with counsel. *See Blakeney*, 108 A.3d at 752.

Appellant's bare assertion that his poor academic performance in high school triggered the trial court's obligation to inquire as to his competence is not supported by Pennsylvania law. *See Smith*, 17 A.3d at 903 (concluding appellant was not entitled relief on his claim that the trial court should have ordered a competency evaluation, where appellant had "not developed how the trial court could have violated his due process rights at and before trial by failing to act on certain evidence that the trial court was unaware of until after trial"). This is especially true given Appellant's responsiveness to questions from the trial court and counsel, and the fact that Appellant completed his G.E.D. just four years prior to his trial. *See* N.T., 8/9/21, at 25.[8] Accordingly, Appellant's third issue entitles him to no relief.

In his final issue, Appellant challenges the discretionary aspects of his sentence. *See* Appellant's Brief at 19. Specifically, Appellant argues that

> [t]otal confinement to a state correctional sentence was unnecessary, as [A]ppellant was not a risk to commit another crime during a period of partial confinement or probation based on his physical condition after his testicular cancer diagnosis. Appellant could receive the necessary treatment without commitment to a state institution, and a lesser sentence would not depreciate the seriousness of [A]ppellant's crime. … The [trial] court only considered the nature of the offense, without any consideration of the characteristics of [A]ppellant or his rehabilitative needs. The court did not state any of the factors

---

[8] Additionally, in Appellant's mental health evaluation, Dr. James G. Jones (Dr. Jones) opined Appellant's "speech was goal[-]directed[,]" and "[h]is insight and judgment were fair." Mental Health Evaluation, 10/12/21, at 2. Although Dr. Jones diagnosed Appellant with a learning disability, his evaluation did not detail any other intellectual defects. *Id.*

regarding [A]ppellant's treatment needs as findings upon which the imposition of the sentence was based.

*Id.* at 20 (citations omitted).

Initially, we observe there is no absolute right to appeal from the discretionary aspects of a trial court's sentence. ***Commonwealth v. Summers***, 245 A.3d 686, 691 (Pa. Super. 2021). Rather, this Court applies a four-part test to determine:

> (1) whether the appellant filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, ***see*** Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 781(b).

***Commonwealth v. Bartic***, 303 A.3d 124, 134 (Pa. Super. 2023) (brackets and some citations omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of the test by raising his claim in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) statement. ***See*** Appellant's Brief at 9. Additionally, Appellant's claim that the trial court failed to consider "the gravity of the violation, the extent of [A]ppellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors of

[42 Pa.C.S.A. §] 9721 of the Sentencing Code[,]" raises a substantial question. *Id.*; *see also Dodge*, 77 A.3d at 1273 (finding a substantial question existed where an appellant alleged the sentencing court "disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence" (citations omitted)).

Preliminarily, we are mindful that sentencing "is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Barnes*, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*) (citation omitted).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

The Pennsylvania Supreme Court has explained:

> The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants[,] and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) (citations and quotation marks omitted).

The Sentencing Code provides that a sentencing court "shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b). Additionally, "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Id.* "A sentencing court has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Celestin*, 825 A.2d 670, 676 (Pa. Super. 2003) (citation omitted). The court must also consider the sentencing guidelines. *See Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008).

Finally, where, as here, the trial court had the benefit of a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

The trial court addressed Appellant's sentencing claim in its Rule 1925(a) opinion:

[A]fter hearing from both [Appellant] and [the] Commonwealth, the [trial] court listed [Appellant]'s aggravating factors[,] which were: [Appellant]'s criminal history, the protection of the public, [Appellant]'s questionable rehabilitative po[tential], and lack of remorse. However, the [trial] court took into account [Appellant]'s PSI and mental health reports as mitigation. Additionally, [Appellant]'s charge for rape of an unconscious person carrie[d] a [statutory maximum sentence of 10 to 20 years in prison,] with [Appellant]'s standard [sentencing guideline] range being 84 to 102, plus or minus 12[ months in prison]. [Appellant]'s charge for sexual assault carrie[d] a [statutory maximum sentence of 5 to 10 years in prison,] with [Appellant]'s [standard sentencing guideline] range being 72 to 90, plus or minus 12[ months in prison]. Moreover, [the] Commonwealth was requesting that this court impose a sentence of 15 to 30 years [in prison], plus three years reporting probation. However, … this court sentenced [Appellant] to 6 to 12 years [in prison, followed by] four years['] reporting probation, and a strict order for medical treatment due to [Appellant]'s cancer diagnosis. Thus, it is clear that this court did not sentence [Appellant] to a manifestly excessive sentence.

Trial Court Opinion, 12/5/21, at 12-13 (record citations omitted).

Our review confirms the trial court considered the appropriate sentencing factors. Additionally, the trial court had the benefit of a PSI, which requires us to presume the trial court was aware of and weighed relevant information regarding Appellant's character and mitigating statutory factors. *See Devers*, 546 A.2d at 18. Appellant has failed to direct us to anything in the record that rebuts this presumption. Accordingly, we conclude the trial court did not abuse its discretion in imposing a sentence **below the mitigated guideline range**.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/18/2024