J-A14031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT WATKINS | : | No. 2198 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 11, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008471-2022

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 12, 2025**

The Commonwealth appeals from the judgment of sentence imposed following an open guilty plea to endangering the welfare of a child entered by Appellee, Robert Watkins.[1] The Commonwealth argues that the sentencing court abused its discretion by imposing a mitigated range term of incarceration that allegedly failed to protect the public. We affirm.

The facts of the case, confirmed by Appellee, were stated by the Commonwealth at the guilty plea proceeding, as follows:

> Courtney Collingsworth[,] the mother of five-year-old [M.W.,] … would testify that she brought her son and her daughter to their father's home, [Appellee's home,] on the evening of July 8th, 2021. The children were in [Appellee's] care and custody and control during that time. And he was their legal guardian in charge of their care. She would testify that on or about Friday, July 9th

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304.

in the middle of the day she received a phone call from [Appellee] indicating that her son was not well. She … later … received another phone call and was notified that there was a medical emergency. She went to the hospital where her child was subsequently pronounced [dead at Children's Hospital of Philadelphia ("CHOP")] at 4:07 p.m.

[F]ire medic unit number 35 … received a call for an unresponsive child on Friday, July 9th, 2021[,] at the Park Town Apartments located on the Ben Franklin Parkway … in the City and County of Philadelphia. Ninth District [Police O]fficer Auty … also responded to the location for an unresponsive child. That child being [M.W.], age 5. [Appellee] was present at the time, and indicated that he took both of his children swimming.

… [A] video marked C-9 for identification purposes would show that [Appellee] … enter[ed] the pool area of the apartment building at 9:59 a.m. that morning with both of his children. They played and swam in the pool area until 10:32.02 a.m. At 10:32.02, you can see [Appellee] carrying his lethargic son out of the pool area. A subsequent video in the elevator area at 10:34.44 shows [M.W.] being carried [fireman's] style over the shoulder of [Appellee] into his apartment.

The child was laid down for a nap. [Appellee] took a video of [M.W.] during that timeframe making reference to how he didn't last very long in the pool. Subsequent to that, [Appellee] tried to awaken [M.W.] a few hours later and he was unresponsive. The child [was] transported by ambulance to CHOP.

When the medic and police arrived[, Appellee] did not offer any explanation for what happened to the child other than he had been taken to the pool and perhaps taken in some water.

After [M.W.] was pronounced [dead], the remains of the child were turned over to the Philadelphia Medical Examiner's Officer where[,] on July 10th of 2021, a postmortem examination was performed by Dr. Lindsay Simon who is now the chief medical examiner here in the City and County of Philadelphia.

She would testify[,] after being qualified as an expert in forensic pathology[,] … to a reasonable degree of medical and scientific certainty that she examined the remains of [M.W.], and … reviewed the toxicology report[,] which yielded the following[:]

> The toxicology report was positive for fentanyl in the blood, brain, liver and gastric areas of the body. The amount that was present in the child's blood was 45 … milligrams[,] which would be[,] in her testimony[,] 10 times [the amount of] a large dose of fentanyl for an adult.
>
> As a result of her examination of the child, she would determine that the immediate cause of death was drug intoxication specifically fentanyl, and that the manner of death was homicide.
>
> She would also testify … that the fentanyl that was in the child's system had a component to it that was commonly found in the nontraditional[,] non-sanctioned manufacturing process of fentanyl, and that the component was consistent with the type of fentanyl that was manufactured illegally and is found in many street recreational drugs here[.]

N.T. Guilty Plea, 4/5/24, 13-17. The Commonwealth also "admitted into evidence a number of exhibits and reports in support of its factual basis." Opinion, Kamau, J., 10/29/24 ("Sentencing Court Opinion"), 3. In addition, the Commonwealth stated that its "theory of this case" was that Appellee's criminal "conduct was in the delayed response to the medical emergency of the child." N.T. Guilty Plea, 4/5/24, 18.

On April 5, 2024, Appellee entered an open guilty plea, that is, one with no agreed-upon sentence, to a single count of endangering the welfare of a child, graded as a second-degree felony with a statutory maximum of ten years' imprisonment. **See** N.T. Guilty Plea, 4/5/24, 6, 10, 20. The court ordered a pre-sentence investigation ("PSI") report and a mental health evaluation ("MHE") of Appellee in anticipation of sentencing. **Id.**, 21.

The sentencing hearing was held on July 11, 2024. It was agreed by the parties that Appellee had a prior record score ("PRS") of zero, as he had no prior convictions, and the crime to which he entered a guilty plea had an

- 3 -

offense gravity score ("OGS") of eleven. N.T. Sentencing, 7/11/24, 4. The PRS and OGS produced a standard range for the Sentencing Guidelines of nine to sixteen months, with the mitigated range being nine months less and the aggravated range being nine months more. *Id.* The court noted that it had reviewed both the PSI and MHE prior to the hearing. *Id.*, 3. Defense counsel then presented argument that the appropriate sentence would be a term of probation, noting also that Appellee had been incarcerated on the charge for a month and a half. *See id.*, 4, 8. Counsel described the single charge, for which Appellee had accepted responsibility, as an unintentional "aberration," a mistake not "reflective of his true character." *See id.*, 4, 7-8, 23. Appellee had no prior criminal history, and the conviction was based on his having failed to call for medical help immediately. *See id.*, 8. Counsel argued that the statutory sentencing factors favored probation, at least in part because incarceration could not be worse than the guilt Appellee felt over the death of his son. *See id.*, 6-7.

The Commonwealth argued that Appellee's sentence should not be probation, but include a period of imprisonment. It first presented testimony from the child's mother, who explained that her son's death had hit the family "hard." N.T. Sentencing, 7/11/24, 11. She recognized that putting Appellee in prison would not change what happened, but thought, given her pain, that "[he] can't just walk around like nothing happened." *Id.*, 12. She testified, "I honestly think it was a mistake," but believed that Appellee could have saved her son if he had come forward "instead of saving" himself. *Id.* She believed

Appellee knew where the fentanyl had come from and had tried to "cover it up." *Id.*, 12. She asked him to be "honest" and give her closure by telling her how the fentanyl had come to be ingested by her son. *See id.*, 11-12. When asked by the court whether she believed "it was intentional," the mother stated, "oh it wasn't intentional, but it became intentional when [he] let my son sit there for two hours dead. [Appellee] could have saved [her son] instead of saving [him]self." *Id.*, 12-13.

The Commonwealth followed the mother's testimony with argument emphasizing Appellee's supposed lies during the investigation of the incident and suggesting he had a more direct involvement in his son's death than he admitted to in his guilty plea. *See* N.T. Sentencing, 7/11/24, 13-20. Pointing out that the expert testimony would have established the fentanyl that killed the victim was likely illegally purchased on the street, the Commonwealth argued that Appellee was, or knew who was, the source of the fentanyl. *See id.*, 14-16. The Commonwealth argued Appellee had lied to investigators by suggesting his son had ingested Percocet as a result of his wiping his son's face with a towel contaminated with Percocet.[2] *See id.*, 14-15. The Commonwealth noted that Appellee also admitted to buying Percocet on the street and referred to it by its street name "perc." *See id.*, 15-16. From this,

_____

[2] Appellee had told investigators that he had taken a Percocet the night before because of pain, but then vomited. He used a towel to clean up and the next day used the same towel to wipe his son's mouth after he vomited. *See* N.T. Sentencing, 7/11/24, 15.

the Commonwealth suggested Appellee knew the source of the fentanyl and hid it from investigators and his son's mother. *See id.*, 16. The Commonwealth criticized Appellee's unwillingness to tell the truth about the source of the fentanyl and asked the court to "hold him responsible for" not doing so. *Id.*, 17. It further contended that Appellee's guilty plea encompassed "leaving drugs around the house that your child can ingest, and then after he ingests it, delaying the call." *Id.*, 18.

Although unwilling "to put numbers on things," the Commonwealth argued that Appellee's behavior "that night, and post arrest, and during the investigation[,]" did not warrant probation, and suggested "that justice requires that he serve some time" in prison. N.T. Sentencing, 7/11/24, 18-19. It submitted that a period of incarceration also would be a clearer deterrent to the community for others who might leave drugs around the house where a five-year old could access them. *See id.*, 19. It suggested that the tragedy was not merely an accident, but "highly reckless and grossly negligent" behavior including the purchase of illegal drugs, leaving them around the house, not seeking emergency aid immediately and misleading investigators. *Id.*, 19-20. The Commonwealth asked for a sentence "that meets the severity of what happened here and that drives home the point to this defendant that actions have consequences." *Id.*, 20.

Defense counsel's rebuttal focused on the incident being an "aberration" on the part of Appellee, on Appellee's lack of criminal history, and that no one knows, including Appellee, how the child obtained fentanyl. *See* N.T.

Sentencing, 7/11/24, 23-25, 27. Counsel also noted that there was no evidence that Appellee destroyed any evidence of fentanyl in his home, much less so thoroughly cleaned his apartment as to eliminate any trace of it. *See id.*, 25-26.

The court then heard directly from Appellee, who expressed his sadness for his lost son. N.T. Sentencing, 7/11/24, 28. He explained that his two children were swimming in the pool and then his son went limp and wanted to lie down. *Id.* Appellee took him back to his apartment and put him down, but his son never woke up. *Id.* "Now they're talking about he ingested fentanyl, [and saying] I was in possession of fentanyl." *Id.* He asserted, "I didn't kill my son. It had nothing to do with my son dying. I'm the one that gave my son CPR." *Id.*, 29. He explained to the court that he could "barely sleep" and "lost a lot of weight." *Id.* He stated that he would accept the sentence the court imposed. *See id.*, 30.

The court then imposed a term of three to six months in county prison to be followed by five years' probation. N.T. Sentencing, 7/11/24, 32. The sentence falls within the mitigated range of the Sentencing Guidelines and addressed both the victim's mother's request and the Commonwealth's argument that a period of imprisonment was warranted. Associated with the probation, the court imposed the following conditions: Appellee must not be convicted of new offenses; seek and maintain full-time employment or enroll in vocational education; complete 200 hours of community service; enroll in

parenting classes; and submit to random drug screens. *See id.*, 32-33. The

court explained its reasoning, as follows:

> This is a very difficult case. … I've been contemplating what is the appropriate resolution in this case for a long time. I keep on coming back to 45-milligrams of fentanyl was in the boy's system, which is ten times a large dose for an adult.
>
> And then I think about the delay. That troubles me. I also think about the [PRS], [OGS], and the guidelines. I look at the fact that [Appellee] has no record -- no real record to speak of. He accepted responsibility. He is a high school graduate. He received his associate's degree. He has another daughter. As counsel indicated, by every stretch, with the exception of this, [he is] an upstanding citizen.
>
> He is still young. He has a lot of potential. So[,] when I'm thinking about what the appropriate resolution is, I'm not only thinking about justice for the family, but I'm also thinking about what is best for society. I'm thinking about his other kids. What is best for the community. I have all these different [things] to consider.
>
> I considered the statutory factors, including the need for the protection of [the] public. I don't think [Appellee] poses a danger to the public. I think this was a mistake. I think it was a horrible mistake[,] and I think [Appellee] made horrible decisions and failed to act. I think that is what the [Endangering the Welfare of a Child] charge is.
>
> When I considered the gravity of the offense in relation to the impact on the victim, and the family, the community, it couldn't have a larger impact. The death of a child. A young child. I think this is probably the greatest impact of a case, impact on the victim and the family that I've seen. And then rehabilitative needs of [Appellee]. At this point, as a result of this incident, [Appellee] is certainly going to need counseling, he is going to need therapy, as is the family.
>
> Acceptance of responsibility is very important. It's the first step towards rehabilitation. On balance, I do think a short custodial sentence is appropriate, but [Appellee] doesn't need to be going upstate.

N.T. Sentencing, 7/11/24, 30-32.

On July 18, 2024, the Commonwealth filed a motion for reconsideration and modification of sentence. In its motion, the Commonwealth argued that the sentencing court had agreed there were aggravating factors, which the Commonwealth identified as street-purchased drugs that "were left out," and Appellee's delay in seeking emergency assistance. *See* Commonwealth's Motion to Reconsider and Modify Sentence, 7/18/24, ¶ 10. It noted that after it completed its argument, the sentencing court "improperly implored" the defense to argue for a second time and provide mitigation. *Id.*, ¶ 12. It argued that by imposing a mitigated range sentence, the court did not adequately consider the Sentencing Guidelines, double-counted Appellee's PRS, and did not account for the court's "findings that the Commonwealth established" aggravating factors. *Id.*, ¶¶ 20-21. It asked the sentencing court to reconsider and "impose a sentence that is both reasonable and authorized by the applicable sentencing statutes." *Id.*, ¶ 24.

On August 2, 2024, the sentencing court filed an order denying the Commonwealth's motion to reconsider. *See* Sentencing Court Order, 8/2/24 (denying reconsideration). On August 16, 2024, the Commonwealth timely filed its notice of appeal. *See* Pa.R.Crim.P. 721(B)(b)(ii) (where no defense post-sentence motions filed, the Commonwealth's notice of appeal "shall be filed within 30 days of the entry of the order disposing of its motion" for modification). The sentencing court and Commonwealth then complied with Rule of Appellate Procedure 1925.

The Commonwealth's question involved in this appeal is:

Did the [sentencing] court abuse its discretion where it failed to protect the public – especially a surviving child – from a reckless and dangerous felon, and offered flawed reasons for its deviation from the sentencing guidelines in imposing a mere 3 to 6 months incarceration for endangering the welfare of his five-year-old child resulting in a fatal overdose?

Appellant's Brief, 4.

The Commonwealth's appeal challenges the discretionary aspects of Appellee's sentence. Discretionary sentencing claims are not appealable as of right. *See Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. *Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022), *appeal denied*, 302 A.2d 626 (Pa. 2023). An appellant must satisfy all four requirements. *Id.*

Here, the Commonwealth complied fully with the first three requirements for merits review of its appellate claim. Therefore, we now turn to whether Appellant established a substantial question for review. We make the determination on a case-by-case basis. *Commonwealth v. Crawford*, 257 A.3d 75, 78 (Pa. Super. 2021). "We cannot look beyond the statement of

questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." ***Id.*** at 78-79 (*quoting* ***Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018)) (brackets omitted). A substantial question is presented where:

> … an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

***Commonwealth v. Mastromarino***, 2 A.3d 581, 585–586 (Pa. Super. 2010) (*quoting* ***Commonwealth v. Bullock***, 948 A.2d 818, 826 n.6 (Pa. Super. 2008)) (citation omitted).

The Commonwealth forwards two substantial questions for review. ***See*** Appellant's Brief, 12. First, the sentencing "court acknowledged multiple aggravating factors and yet failed to protect the public with its sentence," thereby failing to "consider the need to protect the public and the gravity of the offense in fashioning a sentence" in violation of the sentencing code. ***Id.***; ***see*** 42 Pa.C.S. § 9721(b). Second, the sentencing court imposed a sentence in the mitigated range without taking into account "the gravity of the result of the offense [and] without noting compelling reasons for doing so." ***Id.***, 13. The Commonwealth concludes that "there were compellingly different circumstances that justified an upward departure, if any departure from the guidelines. Because the sentence is unreasonable and double-counts [the]

lack of a [PRS], the Sentencing Code requires that it be vacated." *Id.* We find that the Commonwealth has presented a substantial question warranting review because it has "sufficiently articulate[d] the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Mouzon*, 812 A.2d 617, 627–28 (Pa. 2002). *See also Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001) (holding that the Commonwealth raised a substantial question where it alleged defendant's sentence was excessively lenient and provided specific reasons why the sentence violated sentencing norms).

We now turn to a substantive review of the exercise of the sentencing court's discretion. Our standard of review of the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (quoting other cases).

Additionally, our review is confined by statutory mandate. *See Johnson*, 125 A.3d at 826-27. Specifically, we may only vacate and remand for resentencing, here, if the sentencing court's application of a guideline

- 12 -

sentence term was "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).[3] "[I]t is clear that the General Assembly intended the concept of unreasonableness [for the purposes of Section 9781(c)] to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition." **Commonwealth v. Walls**, 926 A.2d 957, 963 (Pa. 2007).

In deciding whether a sentencing court imposed a sentence that was clearly unreasonable, we are to be guided by the considerations listed in 42 Pa.C.S. § 9781(d) – that is, the nature and circumstances of the offense and the history and characteristics of the defendant; the opportunity of the sentencing court to observe the defendant, including any presentence investigation; the findings upon which the sentence was based; and the recommendations of the Sentencing Guidelines – and we review whether the trial court properly considered the sentencing factors outlined in 42 Pa.C.S. § 9721(b) – the protection of the public, the gravity of the offense with respect to the victim and the community, and the rehabilitative needs of the defendant. **See Walls**, 926 A.2d at 964; **Commonwealth v. Velez**, 273 A.3d 6, 12 (Pa. Super. 2022). "[T]he weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's

---

[3] Although the sentence imposed is in the mitigated range of the Sentence Guidelines, thus, below the standard range, it is still within the guideline ranges overall and subject to review under 42 Pa.C.S. § 9781(c)(2). **See Commonwealth v. Johnakin**, 502 A.2d 620, 623 n.2 (Pa. Super. 1985) (a sentence is outside the guidelines, and thereby subject to review under 42 Pa.C.S. § 9781(c)(3), where it is below even the mitigated minimum range that the guidelines set for the offense).

exclusive domain." *Commonwealth v. Baker*, 311 A.3d 12, 19 (Pa. Super. 2024); *Velez*, 273 A.3d at 10 (similar). Where, as here, the sentencing court had a PSI, "it is presumed the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Baker*, 311 A.3d at 19 (internal quotation marks and citation omitted); *Velez*, 273 A.3d at 10 (similar).

The Commonwealth raises three purportedly distinct claims challenging the court's discretionary decision to impose a term within the mitigated range of the Sentencing Guidelines. Each fits within the substantial question alleging excessive leniency and inadequate consideration of statutory factors. *See. Kenner*, 784 A.2d at 811. In its first claim, the Commonwealth argues that the sentencing court acknowledged "multiple aggravating factors within the facts of this case," which "belies" its "lenient sentence" of three to six months' imprisonment. Appellant's Brief, 21. As support, it quotes from the sentencing hearing where the court complimented the Commonwealth's "fine job of providing aggravated circumstances." *Id.*, 22 (emphasis omitted); *see* N.T. Sentencing, 7/11/24, 22. As for aggravating circumstances, the Commonwealth specifically relies on Appellee's delay in calling for emergency help and the "level of obfuscation" he provided to various parties concerning "different details about the incident." Appellant's Brief, 22. The Commonwealth also relies on *Commonwealth v. Moeller*, 2022 WL 2965595 (Pa. Super., filed July 27, 2022) (unpublished memorandum), to support his claim that the sentencing court should have imposed a sentence in the

aggravated range based on the proven aggravating factors. *See* Appellant's Brief, 23.[4]

The Commonwealth assumes that because it presented cogent argument on a point, supported by some evidence in the record, it necessarily proved an aggravating factor. The sentencing court did not state that the aggravating factor was proven, but only noted that the Commonwealth "did a really fine job of providing aggravating circumstances." N.T. Sentencing, 7/11/24, 22. It is on this point that the Commonwealth's reliance on *Moeller* undermines its argument. In that non-precedential decision, we affirmed an aggravated range sentence because the sentencing court had based its sentence on aggravating factors proven by evidence in the record. *See Moeller*, 2022 WL 2965595, *4 ("the court did not base the sentence upon mere speculation … [it] drew its conclusions from the ample testimony of the Commonwealth's expert"). Here, the court exercised its discretion to base Appellee's sentence on other factors.

Moreover, the fact that an aggravating circumstance might be present is not definitive of the sentence. An appropriate sentence is based on the court's discretionary weighing of mitigating *and* aggravating factors. *See Baker*, 311 A.3d at 19 ("weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's

---

[4] We note that, in violation of Pa.R.A.P. 126(a), the Commonwealth's citation to *Moeller* fails to inform us that it is an "unpublished non-precedential memorandum decision" of this Court, which may only be cited for its persuasive value.

exclusive domain"); ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009) (appellate court cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating and aggravating factors). As the sentencing court explains in its written opinion, there was more to consider in the balancing than just the Commonwealth's argument on aggravating circumstances:

> Prior to imposing sentence, the court thoroughly reviewed [Appellee]-specific considerations such as his [PSI], his background and criminal history. The court considered mitigating factors[,] in addition to the aggravating factors[,] in fashioning its sentence. The court considered that [Appellee] was raised by a single mother and maternal grandparents – [his] father was not an active part of his life during his formative years. [Appellee] graduated from high school in 2008 and received an associate's degree in business and accounting from Career Prism [I]nstitute in 2015. Since then, [Appellee] has maintained fairly steady employment. In addition to [M.W., Appellee] has another young child[. Appellee] had no prior arrest record, and there was no indication of domestic abuse or violence.

Sentencing Court Opinion, 6. In addressing the statutory factors of the protection of the public, the impact of crime on the victim and the community, and the rehabilitative needs of Appellee, the court explained:

> [The mother of the victim], understandably, wanted to know how her son was accidentally exposed to a lethal dose of Fentanyl and sought closure. While the senseless tragedy that occurred here deeply impacted the victim's family, this court found that [Appellee] did not pose a danger to the community. Moreover, [Appellee] accepted responsibility for his crime and demonstrated genuine remorse.

***Id.***, 7. In sum, we conclude that the court properly considered both aggravating and mitigating factors and did not abuse its discretion.

It also is clear from the sentencing hearing that the Commonwealth did *not* argue that Appellee's delay in calling for emergency help was an aggravating factor. To the contrary, it was Appellee's argument in favor of a probationary term that the crime he pleaded to was "an unfortunate accident" and based on "failing to make that phone call right away. Not anything else." *See* N.T. Sentencing, 7/11/24, 7, 9. The Commonwealth's aim was to persuade the court that Appellee's criminal conduct was not merely failure to call promptly for emergency aid but included obtaining illegal street drugs and leaving them in a location where a five-year-old could reach them and ingest them. *See id.*, 18-20. It thus argued the victim's death was the result of Appellee's "highly reckless and grossly negligent" behavior warranting a period of imprisonment. *Id.*, 19-20. The sentencing court was not persuaded and, instead, found that the conviction was based on "a horrible mistake" where Appellee "made horrible decisions and failed to act." *Id.*, 31. We find it less than forthright for the Commonwealth to argue on appeal that the criminal conduct it had argued was too limited at the sentencing hearing should now be taken alone as an aggravating factor. Undoubtedly, it was not unreasonable for the sentencing court to reject the Commonwealth's argument for aggravating the sentence where that argument was inconsistent with the testimony proffered by the Commonwealth at the sentencing hearing and the Commonwealth's statement at the guilty plea proceeding. *See id.*, 11-13; N.T. Guilty Plea, 4/5/24, 18.

In its second claim, the Commonwealth argues that the sentencing court impermissibly double-counted Appellee's PRS. It draws its conclusion from the court referencing the PRS and that Appellee had "no real record to speak of." Appellant's Brief, 24; **see** N.T. Sentencing, 7/11/24, 18-20, 30. The Commonwealth also alleges the sentencing court's bias based on it having asked defense counsel, "Do you think he is a danger to the public? Those are the kinds of things I want to hear." Appellant's Brief, 24-25; **see also** N.T. Sentencing, 7/11/24, 23. The Commonwealth argues the last statement is "both telling and troubling," because an "impartial court should not 'want' anything, ever" but here "wanted to give" Appellee a lenient sentence. Appellant's Brief, 25.

This Court has held that it would be an abuse of discretion to deviate below the mitigated range based on the lack of a prior record because that lack is factored into the Sentencing Guidelines' recommendation. **See Commonwealth v. Celestin**, 825 A.2d 670, 679 (Pa. Super. 2003); **see also** 204 Pa. Code § 303.9(a)(1) ("Guideline sentence recommendations are based on the Offense Gravity Score and Prior Record Score"). Here, the sentencing court imposed a term of imprisonment *within* the guideline ranges, albeit the mitigated range. Therefore, it's consideration of Appellee's lack of a prior record score to sentence within the guidelines was not improper.

Moreover, we conclude that the Commonwealth has misunderstood the sentencing court's statements. With respect to its reference to "no real record," the court was not double-counting Appellee's PRS of zero, but,

instead, referring to his lack of *any* documented contacts with police, such as a past arrest. Past arrests are not considered in calculating the PRS or Sentencing Guidelines.[5] Here, where the lack of any past arrests both supports the court's understanding of the incident as aberrational and rebuts the Commonwealth's attempt to cast Appellee as a drug fiend providing fentanyl to his young child, we find that it was not improper double-counting.

In addition, we find nothing improper in the court seeking information from defense counsel that it wanted "to hear," because it was a request for counsel to speak directly to a proper sentencing factor:

> The Court: This appears to be aberrational behavior. When the [c]ourt is fashioning its sentence, one of the things I have to consider is danger to the public. Do you think he is a danger to the public? Those are the kinds of things I want to hear.

N.T. Sentencing, 7/11/24, 23. The court simply asked defense counsel to present argument on one of the factors the Sentencing Code requires the court to consider:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and *the protection of the public*, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

---

[5] In addition, arrests alone are not a proper consideration under the Sentencing Code. **Commonwealth v. Berry**, 323 A.3d 641, 649 (Pa. 2024).

42 Pa.C.S. § 9721(b) (emphasis supplied). We disagree with the Commonwealth that a court requesting argument from counsel on a specific, statutory sentencing factor is improper or even evidence of bias.

In its third claim, the Commonwealth argues, similarly as with its first claim, that the sentencing court "trivializes the nature, consequence, and circumstances of the crime." Appellant's Brief, 26. The Commonwealth contends that there are "[m]any factors … [demonstrating] a need to deter future violently reckless conduct and protect the public, specifically [Appellee's] living and future children, from the dangers [Appellee] poses." *Id.* It specifically notes that the PSI suggested both that Appellee "have no unsupervised contact with minors" and that he was "trying to get back with his children's mother, indicative of the danger [he] poses to behave recklessly with drugs in the face of his children." *Id.* (internal quotation marks omitted).

As we explained above, the premise of the Commonwealth's argument is that the sentencing court should have found that the crime to which Appellee pleaded guilty represented "highly reckless and grossly negligent" behavior. Appellant's Brief, 19-20. However, after reviewing the evidence and arguments presented, the sentencing court found otherwise, deeming the young child's death the result of Appellee's "horrible mistake" in not seeking emergency help immediately. N.T. Sentencing, 7/11/24, 23. The court's finding was consistent with the victim's mother's testimony at sentencing and the Commonwealth's stated theory of the case at the time of the guilty plea. *See id.*, 11-13; N.T. Guilty Plea, 4/5/24, 18. Therefore, we conclude the

sentencing court's finding was not an abuse of discretion. In the same vein, we cannot conclude that sentencing in the mitigated range of the Sentencing Guidelines based on this finding was an abuse of discretion where the court was fully apprised of Appellee's circumstances and that of the victims through the PSI and MHE reports and the evidence presented at sentencing. *See Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (when a court has a PSI report we are required to presume that it weighed the pertinent sentencing considerations).

The Commonwealth does not dispute the court had the benefit of a PSI report, but contends it improperly disregarded two particular points in the report, which allegedly evidenced an improper evaluation of the need to protect the public. *See* Appellant's Brief, 26. With respect to the investigator's recommendation that Appellee "should have no unsupervised contact with minors," it appears possible that the sentencing court mistakenly omitted that recommendation as a condition on the consecutive probation, as it applied all the other recommendations. *See* PSI Report, 4 (Evaluative Summary). To the extent that it was an oversight, the Commonwealth waived any relief on this singular point when it failed to include it in its post-sentence motion. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (*en banc*) (holding that appellant waived discretionary aspects of sentence claim by failing to preserve it in a post-sentence motion or at sentencing, even though raising a substantial question). If the omission were intentional, we would not find that alone it was an abuse of the court's sentencing discretion.

This is particularly so where the court did not agree with the Commonwealth's version of the crime as the product of wanton recklessness. Additionally, defense counsel represented to the court that Appellee would not present a risk to the victim's family as Appellee had relocated to another state, with no intention of ever returning to Philadelphia. *See* N.T. Sentencing, 7/11/24, 7. This latter point would support the trial court's decision to omit requiring supervision with children.

The Commonwealth's other stated concern is that Appellee may be "trying to get back with his youngest child's mother," PSI Report, 2 (Social and Hereditary History). This is a reference to someone other than the mother of the victim, and thereby attenuated from the concerns presented in this case. To the extent that Appellee's aberrational behavior during the incident is an on-going concern, the sentencing court adequately addressed it by directing that Appellee "enroll in parenting courses" as a condition of probation. N.T. Sentencing, 7/11/24, 32.

Our review of the record indicates that the sentencing court did not abuse its discretion. The record shows that the court was aware of and considered the facts of the crime and Appellee's background, including the accidental death of a young child and the resulting effects on the victim's family, as well as Appellee's age, upbringing, education, "potential," and "acceptance of responsibility" as the "first step towards rehabilitation." N.T. Sentencing, 7/11/24, 30-32. The court did not apply the guidelines erroneously, and the application of Sentencing Guidelines – in this case, a

mitigated range sentence – was not "clearly unreasonable." 42 Pa.C.S. § 9781(c)(1), (2).[6] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/12/2025

---

[6] In stark contrast to the facts presented here, this Court has found a mitigated range sentence to be clearly unreasonable where the offense involved was a first-degree felony, and "Appellee had a staggering record of criminal conduct as a juvenile and as an adult;" previous attempts at rehabilitation were unqualified failures; and the MHE indicated "the appellee's prognosis for 'adequate adjustment' seemed 'marginal at best.'" *Commonwealth v. Felix*, 539 A.2d 371, 381 (Pa. Super. 1988).