COMMONWEALTH of Pennsylvania, Appellee,

v.

Jean M. CELESTIN, Appellant.

Commonwealth of Pennsylvania, Appellant,

v.

Jean M. Celestin, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.
Filed May 2, 2003.
Reargument Denied July 3, 2003.

Joseph M. Devecka, State College, for Celestin.

Lance T. Marshall, Asst. Dist. Atty., Bellefonte, for Com., appellee.

Before: STEVENS, GRACI, and OLSZEWSKI, JJ.

GRACI, J.

¶ 1 Appellant, Jean M. Celestin ("Celestin") and the Commonwealth have filed cross-appeals from a judgment of sentence entered November 19, 2001, in the Court of Common Pleas of Centre County. For the reasons set forth below, we dismiss Celestin's appeal, vacate the judgment of sentence, and remand this matter to the trial court for resentencing.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 In October 1999, Celestin and co-defendant, Nathaniel Parker ("Parker"), were charged by criminal complaint with rape of an unconscious person, 18 Pa. C.S.A. § 3121(a)(3), involuntary deviate sexual intercourse with an unconscious person, 18 Pa.C.S.A. § 3123(a)(3), sexual

assault, 18 Pa.C.S.A. § 3124.1, and indecent assault of an unconscious person, 18 Pa.C.S.A. § 3126(a)(4). The charges arose from an incident that occurred in August, 1999, when Celestin and Parker engaged in sexual intercourse with the female victim while she was intoxicated to the point of passing in and out of consciousness. The Commonwealth filed a motion for severance, which was denied on April 4, 2000. On appeal by the Commonwealth, this Court affirmed the trial court's order in an unpublished memorandum decision filed March 21, 2001.

¶ 3 On September 20, 2001, the Commonwealth filed a Motion to Nolle Prosequi the charge of sexual assault as to both defendants. The trial court denied the motion and Celestin and Parker proceeded to a jury trial in October 2001. At trial, Parker was represented by Joseph M. Devecka, Esq. and Celestin by Mark Lancaster, Esq. Parker was acquitted of all charges while Celestin was convicted of one count of sexual assault. On October 29, 2001, Attorney Lancaster withdrew from Celestin's case. Attorney Devecka entered his appearance on Celestin's behalf and continues to represent Celestin in this appeal.

¶ 4 On November 1, 2001, prior to sentencing, Celestin filed a written pleading which he entitled a "Motion for Extraordinary Relief for New Trial." In this motion, Celestin raised three claims of ineffective assistance of trial counsel. On November 6, 2001, the trial court heard arguments by counsel and denied Celestin's motion.

¶ 5 Celestin proceeded to sentencing on November 19, 2001. At the conclusion of the sentencing hearing, the trial court sentenced Celestin to a term of imprisonment of six to twelve months. Celestin did not file post-sentence motions. The Commonwealth filed a motion for reconsideration of

sentence, which was denied on December 17, 2001. These cross-appeals followed.

¶ 6 Celestin raises the following issues on appeal:

1. Whether trial counsel was ineffective for opposing the Commonwealth's motion for Nolle Prosequi of the sexual assault charge against Celestin?

2. Whether trial counsel was ineffective for failing to file an Omnibus Pre-Trial Motion that he had prepared on behalf of Celestin?

3. Whether trial counsel was ineffective for failing to request a jury instruction on consent in the context of a sexual assault case?

*See* Brief and Supplemental Reproduced Record of Appellant, at 3. (Issues have been arranged for clarification purposes). In its cross-appeal, the Commonwealth raises the following issue:

Whether the lower court's imposition of a six (6) month to twelve (12) month sentence after the jury returned a verdict of guilty for the crime of Sexual Assault [ ] is excessively lenient and unreasonable in its 400 percent deviation from the extreme end of the mitigated guideline range?

. . .

Brief for Appellee, at 5. We shall begin with Celestin's appeal, docketed at 27 MDA 2002.

## II. DISCUSSION

### A. 27 MDA 2002

¶ 7 Celestin raises three allegations of ineffective assistance of trial counsel. Since he is raising these ineffectiveness claims on direct appeal, we must begin with a discussion of our Supreme Court's recent pronouncement in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002).

¶ 8 In *Grant,* the Supreme Court held that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738.[1] Underlying the rule announced in *Grant* is the Court's observation that "time is necessary for a petitioner to discover and fully develop claims related to trial counsel ineffectiveness." *Id.* at 737–738. As a result, "the record may not be sufficiently developed on direct appeal to permit adequate review of ineffectiveness claims[.]" *Id.* at 737. Because "appellate courts do not normally consider issues that were not raised and developed in the court below[,]" *id.,* the *Grant* court reasoned that "[d]eferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Id.* at 738.

¶ 9 In *Commonwealth v. Hudson,* 820 A.2d 720 (Pa.Super.2003), we reviewed the merits of two ineffective assistance claims raised on direct appeal. In distinguishing *Grant,* we noted the following:

> *Grant* leaves one open question however: may an appellate court address the merits of an ineffective assistance claim when the claim was, as is the case here, properly raised in a timely post-sentence motion filed in and ruled upon by the trial court in conformity with Pa. R.Crim.P. 720? We answer that question affirmatively. *Grant* is concerned with the difficulty an appellate court faces when trying to resolve ineffectiveness claims without the benefit of an adequately developed record. If an appellant obtained new counsel after verdict, new counsel could seek a new trial based on the ineffective assistance of trial counsel in a timely-filed post-sentence motion under Pennsylvania Rule of Criminal Procedure 720(B)(1)(a)(iv). Pa.R.Crim.P. 720(B)(1)(a)(iv). The trial court would then have to determine if a hearing was required or if the claim could be resolved on the existing record. Pa.R.Crim.P. 720(B)(2)(b). Thereafter, the trial court could resolve the ineffectiveness claim in the time frame established by the rule. Pa.R.Crim.P. 720(B)(3). If that issue was then raised on direct appeal, this court could resolve it. That situation is different from the one governed by *Grant* where the issue of trial counsel's ineffectiveness was not raised in a timely post-sentence motion but was, instead, raised for the first time on appeal. *Grant* simply has no application where the issue was properly raised and decided by the trial court before the direct appeal process started.

*Hudson,* 820 A.2d at 725–726.

¶ 10 Based upon *Grant* and *Hudson,* in the procedural posture of this case, Celestin's proper course of action would have been to raise his ineffective assistance claims in a post-sentence motion pursuant to Pa.R.Crim.P. 720. This Celestin failed to do, opting instead to raise his claims in a written Motion for Extraordinary Relief filed prior to sentencing. Such an approach is clearly disallowed by the Rules of Criminal Procedure.

¶ 11 Rule 704 of the Pennsylvania Rules of Criminal Procedure provides as follows:

---

1. The *Grant* court noted the possibility that, when properly asked to do so, it might announce two limited exceptions to its general rule: where an appellant "raise[s] an allegation that there has been a complete or constructive denial of counsel or that counsel has breached his or her duty of loyalty." *Grant,* 813 A.2d at 738, fn. 14. The Supreme Court has yet to announce either of these exceptions. If it were to do so, neither would be implicated here.

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an *oral* motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B) (emphasis added). The Comment to Rule 704 provides further guidance on when a motion for extraordinary relief is appropriate:

Under paragraph (B), when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. It would be appropriate for counsel to move for extraordinary relief, for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: when there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed. Because the relief provided by this section is extraordinary, boilerplate motions for extraordinary relief should be summarily denied.

. . .

Paragraph (B)(3) is intended to make it clear that a motion for extraordinary relief is neither necessary nor sufficient to preserve an issue for appeal. The failure to make a motion for extraordinary relief, or the failure to raise a particular issue in such a motion, does not constitute a waiver of any issue. Conversely, *the making of a motion for extraordinary relief does not, of itself, preserve any issue raised in the motion, nor does the judge's denial of the motion preserve any issue.*

*Id.* Comment (emphasis added).

¶ 12 The plain terms of Rule 704(B) do not permit the filing of a *written* motion for extraordinary relief prior to sentencing. Moreover, Rule 704(B)(1) clearly contemplates that any oral motion for extraordinary relief be made only in exceptional circumstances. As we admonished in a procedurally similar case, "[t]his Rule was not intended to provide a substitute vehicle for a convicted defendant to raise matters which could otherwise be raised via post sentence motions." *Commonwealth v. Fisher*, 764 A.2d 82, 85 (Pa.Super.2000), *appeal denied*, 566 Pa. 658, 782 A.2d 542 (2001). Under the circumstances of this case, where Celestin obtained new counsel before sentencing, he could have properly raised and preserved his ineffective assistance of trial counsel claims in a timely post-sentence motion under Rule 720. *Hudson.* This he failed to do and we decline to extend the ambit of Rule 704(B) to cover garden-variety ineffective assistance claims such as those raised herein. Accordingly, guided by the general rule of *Grant,* we decline to review Celestin's inef-

fectiveness claims.[2] We turn next to the Commonwealth's appeal, docketed at 45 MDA 2002.

### B. 45 MDA 2002

■ ¶ 13 Celestin was convicted of one count of sexual assault, 18 Pa.C.S.A. § 3124.1, a felony of the second degree with an offense gravity score of eleven. 204 Pa.Code § 303.16. Based upon Celestin's prior record score of zero, the guidelines recommended a minimum term of confinement beginning at 36 to 54 months. *Id.* Therefore, as the trial court noted at sentencing, the minimum standard range sentence in this case would have been 36 to 72 months, or three to six years. N.T. Sentencing, 11/19/01, at 10:23–24. *See also* 42 Pa.C.S.A. § 9756(b) (in imposing a sentence of total confinement, "[t]he court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed."). Where aggravated circumstances are present in a sexual assault case, the guidelines permit a court to impose a sentence that is up to twelve months longer than the upper limit of the standard range. 204 Pa.Code § 303.13(a)(1). In Celestin's case, that

would have resulted in an absolute maximum sentence of 60 to 120 months, or five to ten years.[3] Conversely, in the presence of mitigating circumstances, the guidelines permit a court to subtract twelve months from the lower limit of the standard range. 204 Pa.Code § 303.13(b)(1). Therefore, the lowest recommended sentence in Celestin's case would have been 24 to 48 months, or two to four years.

¶ 14 The trial court departed from the guideline ranges and sentenced Celestin to a term of imprisonment of six to twelve months in the Centre County Prison. The Commonwealth filed a motion to modify sentence, which was denied following a hearing on December 17, 2001. The Commonwealth now appeals.

■ ¶ 15 Section 9781 of the Sentencing Code permits either party in a criminal proceeding to file a petition for allowance of appeal of the discretionary aspects of a sentence to this Court. 42 Pa.C.S.A. § 9781(b). "Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter." *Id.*

---

**2.** Generally, once we have determined that ineffective assistance claims are not properly before us under *Grant,* we would dismiss the claims without prejudice to the defendant's right to assert them in a timely petition under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546 ("PCRA"). If we otherwise found no reversible error, we would affirm the judgment of sentence. *Grant,* 813 A.2d at 738. When presented with a PCRA petition, the trial court would determine whether an evidentiary hearing was required on the claims. *Id.;* Pa.R.Crim.P. 907(1). In light of our disposition of the Commonwealth's appeal and our remand for resentencing, Celestin, if he chooses, may, with counsel who is different from trial counsel, raise his claims of ineffective assistance of trial counsel in a timely-filed post-sentence motion under Pa. R.Crim.P. 720. *Hudson.* Such a motion, if timely filed, would preserve any such issues

for review by this Court on any appeal from the judgment of sentence imposed after remand. We have yet to decide whether such a motion is required where new counsel enters the case before sentencing and whether failure to do so would constitute a waiver in subsequent proceedings under the PCRA. Because that issue is not currently before us, we decline to address it.

**3.** We recognize that adding 12 months to the 54-month upper limit of the standard range applicable here would result in an aggravated minimum of 66 months. However, since the maximum penalty for Celestin's sexual assault conviction is ten years, or 120 months, the aggravated minimum may not exceed one-half of the statutory maximum. 204 Pa.Code § 303.9; 42 Pa.C.S.A. § 9756(b).

It is only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole that we will find a substantial question and review the decision of the trial court. We will grant an appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa.Super.2001), *appeal denied*, 568 Pa. 695, 796 A.2d 979 (2002) (citation omitted).

¶ 16 In fulfilling the above requirements, "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa. R.A.P. 2119(f). *See also Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). The Commonwealth has complied with this pleading requirement. In its Rule 2119(f) statement, the Commonwealth argues that the trial court's sentence was excessively lenient and, therefore, contrary to the fundamental norms underlying the sentencing process and inconsistent with the Sentencing Code. The Commonwealth has raised a substantial question. *See Commonwealth v. Sims*, 728 A.2d 357 (Pa.Super.1999) (Commonwealth presented a substantial question when it contended that the sentence imposed was excessively lenient and unreasonably deviated from the sentencing guideline range). We will therefore grant the Commonwealth's appeal and proceed to the merits of its sentencing challenge.

¶ 17 "[S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Kenner*, 784 A.2d at 811.

A sentencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime. However, the choices *must* be "consistent with the protection of the public, the gravity of the offense, *and* the rehabilitative needs of the defendant."

*Commonwealth v. Moore*, 420 Pa.Super. 484, 617 A.2d 8, 12 (1992) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12, 13 (1988) (emphasis added)). This Court is required to vacate a sentence and remand for resentencing if we find, as the Commonwealth argues here, that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In determining whether a sentence is unreasonable, an appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant[;]

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation[;]

(3) The findings upon which the sentence was based[; and]

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

¶ 18 With the above principles in mind, we shall begin with the findings upon which Celestin's sentence was based. During the hearing on the Commonwealth's motion to modify the sentence,

the trial court set forth, in detail, those findings:

In this case I have departed from the sentencing guidelines. I was aware of the sentencing guidelines. I made reference to them. I don't wish to respond again to all of those, but I believe it is important that I explain to everyone my reasons why using my discretion in this case I chose to depart from the sentencing guidelines knowing exactly what they were.

Number one, Mr. Celestin has no prior record score.... [I]n Mr. Celestin's case there was evidence that he had never been in trouble with the law prior to the events that took place and that is a significant issue for the Court when it tries to evaluate the potential for Mr. Celestin's rehabilitation.

. . .

Also, the Court is aware that this took place more than two years before the trial in the case and that Mr. Celestin has been in no additional trouble since that time and, in fact, there was evidence that he has continued his schooling at the Pennsylvania State University. I was confused by it but he may have already qualified to graduate in one and was seeking some minors in some other academic areas, but I did have evidence that he had a 3.1 grade point average, had accomplished significant other accomplishments in and out of school.

And I need to make a comment about all the letters. Many of the letters I received were from family members and friends and I don't want to be callous about it, but it's not hard to get my aunt to write a nice letter about me, it isn't hard to get my roommate to say I'm a good person and the Court reads those letters trying to filter out the close friendship and association that people

have with somebody being sentenced. What the Court looks for is demonstrative or actual evidence in those letters that do reflect on the character of somebody.

I found ample evidence that Mr. Celestin continues to accomplish things and is, in fact, an appropriate candidate that the Court should consider as being rehabilitatable, not least among those is the fact that much like there are a number of supporters in this courtroom today of the victim in this case, Mr. Celestin had a number of people sit through the entire trial, stay in this courtroom in this courthouse for many hours waiting for the verdict and return here at the time of sentencing. Some of those people are still here today with him. The commitment that is demonstrated by that leads me to believe that the letters are not fluff, they are not something that was written to try to help a buddy get out of trouble; that they were heartfelt expressions from the people who wrote them.

Also, I considered at the time of sentencing the fact that Mr. Celestin's involvement in this case although obviously intimately and centrally involved was brief. Mr. Celestin is not the person as in many of the other cases who was involved in seeing that the victim became intoxicated or that the victim was brought to the home or, in fact, that the victim was brought to the place where the crime took place. All of those events were either the result of other people or the result of Mr. Parker, the co-defendant who was acquitted in this case.

Also, Mr. Celestin was not involved in the initiation of sexual activity and from the testimony of the only eye witness, only impartial eye witness who testified—impartial maybe is the wrong

word but from the testimony of an eye witness who was sober, Mr. Tamarlane Kangas, it was not Mr. Celestin who asked to become involved although I'm not depreciating what he did. He was encouraged by Mr. Parker to become involved.

His involvement was brief. There was testimony and there was evidence that the acts continued through the rest of the evening. There was testimony about cigarettes, a cessation in the sexual activity taking place. Mr. Celestin was not still there during that activity. There was also consensual intercourse the next morning [between the victim and co-defendant Parker]. Mr. Celestin was not there for any part of that.

Also, Mr. Celestin as far as—and this is confusing, but Mr. Celestin from the record that I understand it never attempted to conceal his identity in this case. There was considerable effort made by Mr. Parker to conceal Mr. Celestin and that may have been part of a conspiracy but when confronted, Mr. Celestin himself admitted that he had been involved.

Also considered by me is the fact that the Commonwealth a week before the case filed a motion with this Court that said that the evidence is insufficient to support a conviction for sexual assault. When the Court denied that motion and refused the Commonwealth the opportunity to nol pros or to dismiss the sexual assault counts against Mr. Celestin and Mr. Parker and the Commonwealth was forced to go to trial, it was, in fact, that count alone that Mr. Celestin was convicted of. And, as I referenced earlier, [the Commonwealth's attorney] made the statement at that time that the theory that the Commonwealth was going to trial on was that if the victim was, in fact, conscious during these acts, that none of these perpetrators, Mr. Parker or Mr. Celestin, was guilty of anything. If she was unconscious, then they were, in fact, guilty of everything.

Next is I believe as I cited the cases that I have already referred to that have been the product of plea bargain negotiations in this county and there are volumes of them, but most recently and most applicable Cory Young and—excuse me—Cory Weaver and Christopher Young demonstrate that the exercise of appropriate discretion in difficult cases can result in sentences that are appropriate that are well below the sentencing guidelines when the circumstances dictate that it be such.

I find that the factual scenarios and I don't know—as I have conceded to [the Commonwealth's attorney], I do not know all the difficulties that are associated with the District Attorney's obligation to bring cases to trial and to be able to establish elements beyond a reasonable doubt and the Court can't know that, that's not the Court's role but the Court can through its numerous observations recognize that not every case is clear-cut, not every departure from the sentencing guidelines is shocking or is outrageous; that there are circumstances whereby the exercise of appropriate discretion will result in sentences that are outside and below the sentencing guidelines and outside and above the sentencing guidelines.

And, lastly, I again need to reference the fact that although there has been a great deal of suggestion made in the media and otherwise, phone calls that I have received, letters that I have received that this was, in fact, a rape case and it clearly was a rape case by the Court can't sentence on what was, the Court must sentence on what is. The jury determined that many of the aggravating circumstances that would lead a

Court to an aggravated sentence in this case were not present by the time that we went to sentencing. The jury determined that there was no unconsciousness of the victim; that there had been no force or threat of force; that there had been, in fact, just one offense committed, one charged offense committed and that was the sexual assault.

. . .

The Court considered all of the circumstances of this case and all of the circumstances in which the victim finds herself and all the opportunities and circumstances that the Defendant finds himself in and believed as it still believes that a deviation from the sentencing guidelines was appropriate. Therefore, Commonwealth's motion for modification of sentence or reconsideration of sentence is denied.

N.T. Motion to Modify Sentence, 12/17/01, at 22:14–28:25.

¶ 19 For purposes of our analysis, we shall group the trial court's findings into seven areas that influenced the court's decision to impose a sentence below the mitigated range: (1) Celestin's lack of a prior record, (2) Celestin's good behavior and accomplishments subsequent to his arrest, (3) letters of reference submitted on Celestin's behalf, (4) the nature and extent of Celestin's involvement in the crime, (5) the Commonwealth's unsuccessful motion to *nol pros* the charge of sexual assault, (6) factually similar cases in which plea bargains resulted in sentences below the guideline range, and (7) the lack of aggravating circumstances. We shall address these areas seriatim.

¶ 20 First, the trial court noted that Celestin's lack of a prior record score was a "significant issue" with respect to the "potential for Mr. Celestin's rehabilitation." *Id.* at 23:4–6. The court's reliance upon this factor was clearly misplaced since the guideline sentence recommendations already contemplate a defendant's prior record score. *See* 204 Pa.Code § 303.9 ("Guideline sentence recommendations are based on the Offense Gravity Score and Prior Record Score"); § 303.11 ("The sentencing guidelines provide sanctions proportionate to the severity of the crime and the severity of the offender's prior conviction record."). This Court has also expressly rejected the practice of deviating from the guidelines based upon the lack of a prior record score:

> [T]he guidelines inherently give credit to those who have led a relatively law-abiding life. An accused's prior record, or lack thereof, is one of the two elements utilized in determining the guideline sentence ranges.... Thus, to assign the lack of, or even a minimal, prior record as a reason for deviating from the guidelines is to, in effect, give an accused credit for the same factor twice. Such an evaluation is error.

*Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352, 1355 (1985).

¶ 21 The trial court's second and third factors involve Celestin's good behavior and accomplishments since his arrest and the character references and support offered by his friends and family. The trial court's general, non-specific references to Celestin's "accomplishments" fail to explain the necessity of a 400% downward deviation from the mitigated sentencing range. With respect to the letters of reference offered on Celestin's behalf, the trial court admits that these types of items, while generally unreliable, were in this case bolstered by the level of commitment displayed by Celestin's supporters. Again, the trial court fails to specify how the content of these letters justifies the lenient sentence imposed. Also, the trial court opines that both of the above factors demonstrate that Celestin is a good candi-

date for rehabilitation. Although rehabilitation is certainly an important and laudable goal of our penal system, it is but one factor in a proper sentencing consideration. *Moore, supra.* Of equal import, particularly with regard to the crime of sexual assault, are protection of the public and the gravity of the offense. *Id.* By placing undue emphasis on the goal of rehabilitation, the trial court embarked on an unbalanced approach to sentencing that, in our view, was unreasonable in this case.

¶ 22 The trial court next found that, although Celestin was "obviously intimately and centrally involved" in the sexual assault of the victim, "his involvement was brief." N.T. Motion to Modify Sentence, 12/17/01, at 25:3, 19. "[A] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. The duration of the sexual intercourse is clearly irrelevant to the defendant's guilt or innocence of this crime, and we are offended by the trial court's suggestion that the brevity of the criminal act here justifies a lenient sentence. Such a proposition finds no support in the law or the guidelines.

¶ 23 Related to this sentencing factor are the trial court's findings that Celestin did not plan or initiate the assault, was absent when the victim and co-defendant Parker engaged in consensual sexual intercourse the following day, and made no attempt to conceal his identity when confronted by the police. These findings are all irrelevant in light of the fact that Celestin committed, and was convicted of, sexual assault. Moreover, crediting Celestin for choosing not to conceal his identity during the investigation seems misplaced when one considers that, as recently as his sentencing hearing, Celestin continued to maintain his innocence rather than showing remorse for his actions.

¶ 24 The trial court's next two findings concern the Commonwealth's tactical (and unsuccessful) motion to *nol pros* the sexual assault charges against Celestin and Parker and the Commonwealth's willingness to accept sentences below the guideline ranges in factually similar, plea bargained cases. Neither of these factors is, or should be, relevant to Celestin's sentence. Irrespective of the Commonwealth's *nol pros* motion, the jury found that, based upon the evidence, Celestin was guilty of sexual assault. As the trial court stated at Celestin's original sentencing hearing, "[t]his Court must base its verdict—or I mean its judgment of sentence upon what the jury has determined in its verdict." N.T. Sentencing, 11/19/01, at 12:6–7. We fail to see how an unsuccessful pre-trial motion by the Commonwealth is relevant to a defendant's sentence, and the trial court offers no support for this theory.

¶ 25 Even less relevant to Celestin's case are sentences imposed in other factually similar cases, especially where those sentences were the result of plea agreements. We agree with the Commonwealth that allowing a sentencing court to base its decision on the results of negotiated plea bargains in other cases would have a chilling effect on the plea negotiation process. The Commonwealth also correctly points out that a sentencing court in one case cannot possibly know all of the various considerations and factors underlying a negotiated plea in another case. These factors might include the sufficiency and weight of the evidence against a defendant, the victim's wishes, and, especially with respect to sexual offenses, the victim's willingness to testify in court. The trial court's reliance upon the above two factors was unreasonable.

¶ 26 Finally, the trial court cited the jury's determination that "many of the aggravating circumstances that would lead a Court to an aggravated sentence in this case were not present by the time that we went to sentencing." N.T. Motion to Modify Sentence, 12/17/01, at 28:1–4. We reject outright the court's suggestion that, for sentencing purposes, the lack of aggravating factors is in itself a mitigating factor justifying a downward departure. *See Commonwealth v. Sims,* 728 A.2d 357, 360 (Pa.Super.1999), *appeal denied,* 560 Pa. 703, 743 A.2d 918 (1999) (in rejecting an excessively lenient sentence this Court noted that "[t]he absence of aggravation is not the equivalent of mitigation.")

¶ 27 In attempting to support this finding, the trial court noted that "[t]he jury determined that there was no unconsciousness of the victim [and] that there had been no force or threat of force." N.T. Motion to Modify Sentence, 12/17/01, at 28:4–6. The record indicates that the jury made no such findings. Nor can they be inferred from the jury's acquittal of Celestin on the three related charges involving sexual offenses against an unconscious person. It is axiomatic that a "jury's acquittal on one charge cannot be seen as a specific finding in relation to any of the evidence produced." *Commonwealth v. Miller,* 441 Pa.Super. 320, 657 A.2d 946, 949 (1995) (citation omitted). The trial court, therefore, erred in drawing inferences regarding the jury's findings, and its reliance upon those inferences as sentencing factors was unreasonable.

¶ 28 We have considered the findings advanced by the trial court in support of Celestin's sentence and find that they do not adequately support a downward deviation from the mitigated guideline range. Although the trial court repeatedly observed that Celestin is "rehabilitatable," the sentence imposed must still be "consistent with the protection of the public [and] the gravity of the offense." *Devers,* 546 A.2d at 13. The Pennsylvania Commission on Sentencing has assigned the offense of sexual assault to Level 5 of the sentencing guidelines, placing it in the same category as murder, voluntary manslaughter, rape, robbery, aggravated assault, kidnapping and arson. 204 Pa.Code § 303.16. The Commission further describes Level 5 offenses as follows:

> Level 5 provides sentence recommendations for the most violent offenders and those with major drug convictions, such that the conviction has an Offense Gravity Score of 9 or greater or the standard range requires state incarceration in a state facility. The standard range in such a case is defined as having a lower limit of 30 months or greater. *The primary purposes of the sentencing options at this level are punishment commensurate with the seriousness of the criminal behavior and incapacitation to protect the public.*

204 Pa.Code § 303.11 (emphasis added). It is beyond peradventure that sexual assault is a serious crime and, in this case, the punishment should and must fit that crime.

### III. CONCLUSION

¶ 29 We have carefully considered a number of factors in this case, including the nature and seriousness of the offense, the trial court's observations and findings with regard to its sentencing decision, the guidelines promulgated by the Pennsylvania Commission on Sentencing, and the thoughtful arguments of both parties. Notwithstanding the broad discretion normally afforded to a trial court in sentencing matters, we conclude that the sentence imposed in this case was unreasonable. On remand, we remind the trial court that its sentence must reflect not just the reha-

bilitative needs of Mr. Celestin, but also the gravity of the offense and protection of the public.

¶ 30 The case is remanded for resentencing consistent with this opinion. Celestin's claims of ineffective assistance of trial counsel are dismissed without prejudice to his right to assert such claims in a timely post-sentence motion following resentencing or as otherwise allowed by law.

¶ 31 Judgment of sentence vacated; case remanded. Jurisdiction relinquished.