2025 PA Super 207

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| YEVGENIY TORSUNOV | : | |
| | : | |
| Appellant | : | No. 2423 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000034-2020

BEFORE:   MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY MURRAY, J.:                    **FILED SEPTEMBER 17, 2025**

Yevgeniy Torsunov (Appellant) appeals from the judgment of sentence imposed following his conviction by the trial court of one count each of burglary, criminal trespass, theft by unlawful taking (theft), and receiving stolen property (RSP).[1]  We affirm.

This case arises from the burglary of Mouraldin Ahkmad's (Mr. Ahkmad) residence on Alicia Street in Philadelphia, Pennsylvania (the residence).  On the evening of November 18, 2019, Mr. Ahkmad returned home with his wife, Hanan Saleh (Mrs. Saleh), and three minor children (the family).  The family found their home in disarray and discovered that various items of personal property had been stolen.  One such item was a broken, gold bracelet with

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(2), 3503(a)(1)(i), 3921(a), 3925(a).

Mr. Ahkmad's one-year-old daughter's name inscribed on the back in Arabic (the bracelet). For reasons discussed *infra*, Mr. Ahkmad immediately suspected his neighbor, Appellant, of being the perpetrator.

In the course of his investigation, Philadelphia Police Detective Anthony Krebs (Detective Krebs) learned that Appellant sold the bracelet to Gold 555 (the pawnshop) approximately two weeks after the burglary. Mr. Ahkmad identified the bracelet as one of the items stolen from his residence. Following additional investigation, police charged Appellant with the above crimes.[2]

On February 10, 2022, the matter proceeded to a nonjury trial.[3] The Commonwealth called as witnesses Mr. Ahkmad and Detective Krebs. Appellant presented no evidence.[4]

---

[2] The Commonwealth originally charged Appellant, by criminal information, with burglary (persons present, bodily injury crime), 18 Pa.C.S.A. § 3502(a)(1)(i). The docket reflects that the Commonwealth amended the criminal information to include an additional count of burglary (no persons present), 18 Pa.C.S.A. § 3502(a)(2), on December 2, 2020. The certified record does not contain any filings pertaining to the Commonwealth's amendment.

[3] Prior to trial, the trial court colloquied Appellant concerning his decision to waive his right to a jury trial. **See** N.T., 2/19/22, at 14-17. Appellant does not challenge the voluntariness of his jury trial waiver on appeal.

[4] Pertinently, Appellant marked as an exhibit the preliminary hearing transcript and used the transcript to refresh Detective Krebs's recollection. **See** N.T., 2/10/22, at 74-76. Appellant did not move for admission of the preliminary hearing transcript into evidence.

At trial, Mr. Ahkmad testified that, when he arrived home at approximately 11:00 p.m., he noticed that the back door of his residence was open, and "[t]he house was really messy." N.T., 2/10/22, at 21. Mr. Ahkmad explained that, prior to the burglary, he had a television (TV) mounted to a wall in his bedroom. *Id.* at 23. According to Mr. Ahkmad, "When we came in, ... half of [the mounted TV] was in there, and the other half was gone. It look[ed] like someone tried to take the whole TV but couldn't, so they took half of it." *Id.* Mr. Ahkmad testified that he additionally discovered that an iPad, computer, and another television were stolen from the residence. *Id.* at 24-25. Although he had not immediately realized it had been stolen, Mr. Ahkmad testified that he was able to identify the bracelet sold to the pawnshop from a picture taken by Detective Krebs. *Id.* at 33-34. Mr. Ahkmad valued the stolen property at approximately $4,000. *Id.* at 25.

Mr. Ahkmad testified that he believed Appellant had burglarized the residence because, two days prior to the incident, Appellant asked Mrs. Saleh if they "have cameras in the [residence]." *Id.* at 29; *see also id.* at 29 (Mr. Ahkmad testifying that Mrs. Saleh told Appellant that the residence had surveillance cameras, even though it did not). After calling the police, Mr. Ahkmad testified that he went to Appellant's home to confront him, but Appellant's mother, who answered the door, told Mr. Ahkmad that Appellant was not home. *Id.* at 26. Mr. Ahkmad explained that the police conducted their investigation at his residence from approximately 11:00 p.m. to 1:30

a.m. *Id.* at 27. Mr. Ahkmad testified that, shortly before the police left, Appellant arrived at the scene and asked Mr. Ahkmad, "what's going on?" *Id.* According to Mr. Ahkmad, "[Appellant] said, you told my mom you think it's me[,]" and Mr. Ahkmad confirmed that he suspected Appellant of committing the burglary. *Id.*

Mr. Ahkmad testified that, "about seven or eight months after" the burglary, he observed the other half of his mounted TV "in the front of [Appellant's] garage." *Id.* at 52; *see also id.* at 53 (Mr. Ahkmad stating that he was "almost 90 percent sure it[ was] the other half [of the mounted TV] that was missing from my house."). On cross-examination, Mr. Ahkmad admitted that he did not advise the police of his discovery. *Id.* at 54.

Detective Krebs testified that, utilizing an online search tool (Leads),[5] he learned that Appellant had sold the bracelet to the pawnshop for $30. *Id.* at 60, 62-64, 66; *see also* Commonwealth's Exhibit C7 (Leads Ticket). After Mr. Ahkmad confirmed that the bracelet had been taken from the residence,

_____

[5] Detective Krebs described the Leads program as follows:

> Philadelphia … adopted the [Leads] program for pawnshops and We Buy Gold stores to use. Prior to that, we used to go to each store and collect manual [purchase] tickets, so [the Leads online program is] a requirement from Philadelphia that the pawnshops and We Buy Gold stores adhere to. [The businesses] document what [the businesses] purchased. [The businesses] have to take a photograph of the [sellers] and a copy of the identifications and a left thumbprint [of the sellers].

N.T., 2/10/22, at 60.

Detective Krebs secured a search warrant for Appellant's home.  *Id.* at 66.

Detective Krebs's subsequent search of Appellant's home uncovered no

incriminating evidence.  *Id.* at 72.  After ***Mirandizing***[6] Appellant, Detective

Krebs testified that Appellant admitted to selling the bracelet to the pawnshop,

but denied burglarizing the residence or knowing that the bracelet was stolen

property.  *Id.* at 77-79.  Detective Krebs testified that Appellant stated that

he traded a bag of heroin to a man named Carmen in exchange for the

bracelet.  *Id.* at 79-80; ***see also id.*** at 80-81 (Detective Krebs agreeing that

Appellant showed him Carmen's Facebook profile).[7]  Detective Krebs further

confirmed that Appellant claimed that his garage had been burglarized shortly

before the residence was burglarized.[8]  *Id.* at 77; ***see also id.*** at 42 (Mr.

Ahkmad testifying that prior to the burglary, Mrs. Saleh told him that Appellant

wanted to know whether the residence had cameras because Appellant's

garage "was just burglarized.").

_____

[6] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

[7] Detective Krebs did not testify as to whether he attempted to corroborate Appellant's account.

[8] Detective Krebs stated he could not recall whether he had confirmed that Appellant filed a police report concerning the alleged burglary of his garage. N.T., 2/10/22, at 73.  On cross-examination, Detective Krebs agreed that when asked at the preliminary hearing whether Appellant had filed a police report, he responded, "I believe so, yes."  *Id.* at 76.

At the conclusion of trial, the trial court convicted Appellant of the above-described offenses.[9] The trial court scheduled Appellant's sentencing hearing for April 22, 2022.

On April 19, 2022, Appellant filed a document titled "Brief in Support of Petitioner's Motion for Extraordinary Relief" (Motion for Extraordinary Relief). Therein, Appellant indicated that he "intends to bring an oral motion for extraordinary relief pursuant to [Pa.R.Crim.P.] 704(B)." Motion for Extraordinary Relief, 4/19/22, ¶ 4; *see also* Pa.R.Crim.P. 704(B)(1) ("Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial."). In his Motion for Extraordinary Relief, Appellant argued that (1) the Commonwealth presented insufficient evidence to support his convictions, and (2) his convictions were against the weight of the evidence. *Id.* at 5-9 (unpaginated).

Three days later, Appellant failed to appear at sentencing; the trial court issued a bench warrant. On August 9, 2022, the Philadelphia Clerk of Courts docketed an order denying Appellant's Motion for Extraordinary Relief by operation of law. Approximately two years later, law enforcement

---

[9] The trial court acquitted Appellant of burglary (persons present, bodily injury crime), 18 Pa.C.S.A. § 3502(a)(1)(i).

apprehended Appellant, and the matter proceeded to sentencing on August 30, 2024.

Pertinently, at sentencing, Appellant stated that "just for appellate purposes, I would rest on the written Motion for Extraordinary Relief[.]" N.T., 8/30/24, at 4 (capitalization modified). The trial court observed that the motion had already been denied by operation of law, and "[t]o the extent [that] it was not, the [trial c]ourt will put on the record that it is denied." *Id.* at 5. Appellant did not respond to the trial court's ruling or make any effort to argue his sufficiency or weight claims at sentencing.

After hearing the parties' positions, the trial court sentenced Appellant to an aggregate 1½ - 3 years in prison, followed by two years' probation. Appellant did not file post-sentence motions. This timely appeal followed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement. Upon Appellant's motion, the trial court extended Appellant's deadline to file a concise statement. Appellant thereafter timely filed his concise statement. On November 18, 2024, the trial court filed a Rule 1925(a) opinion.

Appellant raises the following two issues:

1. Was the evidence insufficient to prove [Appellant] guilty beyond a reasonable doubt of the charges against him[,] where the evidence failed to prove that it was Appellant who committed the alleged crimes?

2. Was the verdict against the weight of the evidence for the charges of which Appellant was convicted[,] where the evidence was inadequate to prove that Appellant committed the crimes to such a degree as to cast such serious doubt upon the validity of Appellant's conviction that his convictions shock the conscience?

Appellant's Brief at 4.[10]

In his first issue, Appellant argues the Commonwealth failed to present sufficient evidence to support his convictions for each offense. *Id.* at 14. Specifically, Appellant "asserts that the evidence failed to prove that he was the person who committed the burglary, [criminal] trespass and theft offenses[, *i.e.*, theft and RSP,] of which he was convicted." *Id.* at 14-15. Appellant argues the trial court relied only on three facts from which it, in Appellant's estimation, improperly inferred Appellant's guilt: "1) Appellant pawned [the] bracelet …; 2) Appellant inquired whether [Mr. Ahkmad] had cameras; [and] 3) [Mr. Ahkmad] claimed he saw 'half' of a TV in Appellant's garage, which [Mr. Ahkmad] claimed had been taken in the burglary." *Id.* at 15 (punctuation modified).

Appellant emphasizes that "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the

_____

[10] We note Appellant's objection to the Commonwealth's references to preliminary hearing testimony within its appellate brief. Appellant's Reply Brief at 1-4. As the preliminary hearing transcript was not admitted into evidence, and because its use was plainly limited to refreshing Detective Krebs's recollection, we agree with Appellant. *See* N.T., 2/10/22, at 74-76. Accordingly, we do not consider the Commonwealth's improper references to preliminary hearing testimony in our review. *See Commonwealth v. Snowden*, 330 A.3d 422, 431 (Pa. Super. 2025) (*en banc*) ("It is **fundamental and essential** that, at trial, a document must be offered to and admitted by the court before it may be considered evidence …." (emphasis in original; citation omitted)).

perpetrator of the crimes." ***Id.*** at 14 (citing ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018)). Appellant devotes the majority of his sufficiency argument, however, to whether the Commonwealth presented sufficient evidence that Appellant had knowledge that the bracelet was stolen property.[11] ***See id.*** at 15-24; ***see also id.*** at 15-16 (Appellant describing the elements of RSP, but not the elements of burglary, theft or criminal trespass), 23 (Appellant stating that his "possession and sale of the bracelet was open and free from any attempt to hide his identity.").

Concerning his burglary, theft, and criminal trespass convictions, Appellant argues that the Commonwealth failed to present sufficient evidence that he was the perpetrator of the crimes. Appellant's Brief at 14. Appellant contends "the trial court overvalued the actual evidence presented to reach an inference that was not supported by the evidence presented in court." ***Id.*** at 27. In support of his argument, Appellant relies on ***Commonwealth v. McFarland***, 308 A.2d 592 (Pa. 1973), wherein our Supreme Court explained that "[e]videntiary inferences, like criminal presumptions, are constitutionally infirm unless the inferred fact is more likely than not to flow from the proved fact on which it is made to depend." ***Id.*** at 594.

_____

[11] A person is guilty of RSP "if he intentionally receives, retains, or disposes of movable property of another **knowing that it has been stolen, or believing that it has probably been stolen**, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a) (emphasis added).

Initially, we consider whether Appellant preserved his sufficiency claim concerning his RSP conviction. We observe that "when challenging the sufficiency of the evidence on appeal, the appellant's court[-]ordered [Rule] 1925(b) concise statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." *Smyser*, 195 A.3d at 915 (citation, quotation marks, and brackets omitted).

Here, Appellant's concise statement presented, *inter alia*, the following issue: "The evidence was insufficient to prove [Appellant] guilty beyond a reasonable doubt of burglary, theft …, [RSP] or criminal trespass[,] in that the evidence failed to prove that it was [Appellant] who committed the alleged crimes." Concise Statement, 10/22/24, ¶ 3. In his brief, however, Appellant does not dispute that the bracelet was stolen property or that he was in possession of it; rather, Appellant claims the Commonwealth's evidence was insufficient to prove Appellant's intent, *i.e.*, that he knew, or should have known, that the bracelet was stolen. *See* Appellant's Brief at 23, 28. As Appellant failed to identify in his concise statement the only element of RSP he challenges in his brief, Appellant has waived this issue on appeal. *See Smyser*, 195 A.3d at 915. Even if Appellant had preserved a sufficiency challenge to his RSP conviction, it would merit no relief, which we discuss *infra*.

We review Appellant's sufficiency challenge pursuant to the following standard:

- 10 -

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation omitted), *appeal granted*, 320 A.3d 1231 (Pa. Jan. 6, 2025); *see also In Interest of J.B.*, 189 A.3d 390, 409 (Pa. 2018) ("[O]ur Court has [] long made an exception to this principle of appellate deference in recognition of the fact that, in some cases, the entire body of evidence … is so deficient that it does not reasonably support a finding of guilt beyond a reasonable doubt[.]" (citation omitted)).

The Crimes Code defines burglary, in relevant part, as follows:

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

- 11 -

* * *

> (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present[.]

18 Pa.C.S.A. § 3502(a)(2).

A person commits the crime of criminal trespass if, "knowing that he is not licensed or privileged to do so, he … enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" *Id.* § 3503(a)(1)(i).

A person commits the crime of theft "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." *Id.* § 3921(a). "Moveable property" is defined as "property of which location can be changed." *Id.* § 3901. "Deprivation" occurs if a person "withhold[s] property of another permanently" or "dispose[s] of the property so as to make it unlikely that the owner will recover it." *Id.*

RSP has the following three elements: "(1) intentionally taking possession of another person's movable property; (2) knowing or believing that it has been stolen; and (3) an intent to deprive the rightful owner of her property permanently." *Commonwealth v. Riley*, 302 A.3d 112, 116 (Pa. Super. 2023) (citation omitted). Possession of stolen property, alone, is insufficient "to justify an inference that the defendant knew the property was stolen." *Id.* However, "[a]s there is rarely direct proof that a defendant knew

for a fact that property was stolen, guilty knowledge may be inferred from circumstantial evidence." *Id.* (citation omitted).

Finally, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Smyser*, 195 A.3d at 915 (citation omitted). It is well-settled that "[e]vidence of identi[ty] need not be positive and certain to sustain a conviction." ***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citation omitted).

> [E]ven if the Commonwealth presented only circumstantial evidence and offered no positive identification of the [perpetrator], we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove [the accused's] guilt.

***Commonwealth v. Robertson***, 874 A.2d 1200, 1206 (Pa. Super. 2005); ***see also Commonwealth v. Strafford***, 194 A.3d 168, 175-76 (Pa. Super. 2018) ("[A]ny indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." (citation omitted)).

Instantly, in its thorough Rule 1925(a) opinion, the trial court considered and rejected Appellant's sufficiency challenge:

> [T]he record established that [Mr. Ahkmad and his family] arrived home on November 18, 2019, and discovered that someone had gained entry to the [residence] while they were out. N.T., 2/10/22, at 21. The back door was left ajar, but [neither Mr. Ahkmad nor Mrs. Saleh] had [] given anyone permission to enter the home. *Id.* at 22.

- 13 -

When the family entered the [residence], it was clear that someone had rifled through their drawers as if they were looking for something. *Id.* at 21-22. Many of their belongings were strewn about the home. *Id.* [Mr. Ahkmad] observed that several electronics were missing and later learned that [the] bracelet was stolen from [his] daughter's bedroom. *Id.* at 22-24, 33.

There is no camera footage of [Appellant] entering the [residence] on the date of the burglary[;] however[,] there is significant evidence that proves beyond a reasonable doubt that [Appellant] committed the burglary. It was stipulated between counsel that [Appellant] pawned the … bracelet [approximately two weeks] after the burglary. *Id.* at 61; *see also* Commonwealth's Exhibit C7 (Leads Ticket). [Appellant] confirmed that the family did not have cameras two days prior to the burglary, and he was present on the scene the night of the burglary. *Id.* at 27, 29.

The open door shows there was an entry to the home[;] the rifled[-]through drawers show that there was an intent to steal at the time of the break[-]in[;] and the family did not give anyone permission to enter the home. Therefore, the elements of burglary and criminal trespass were proven beyond a reasonable doubt.

Next, [Appellant] stole and maintained possession of the … bracelet until he sold it to [the] pawnshop. It is clear that by selling the bracelet, [Appellant] had no intention of returning it to the [family]. Therefore, the elements of theft … and [RSP] were proven beyond a reasonable doubt.

The trial court found that [Appellant's] possession of the bracelet was not mere coincidence. The direct evidence coupled with the circumstantial evidence proves the elements of the crimes beyond a reasonable doubt.

Trial Court Opinion, 11/18/24, at 12-13 (record citations added).

The trial court's factual findings are supported by the record and its legal conclusions are sound. Our review confirms that the evidence presented at trial, properly viewed in the light most favorable to the Commonwealth,

sufficiently established Appellant's identity as the perpetrator and all required elements of burglary, criminal trespass, theft, and RSP. *Scott*, 325 A.3d at 849.

Appellant's reliance on *McFarland*, *supra*, and *Commonwealth v. Matthews*, 632 A.2d 570 (Pa. Super. 1993), is unavailing, as these cases are readily distinguishable. In *McFarland*, our Supreme Court reversed the defendants' burglary and larceny convictions, because the **only** evidence supporting those convictions was the fact that "the stolen items were found in [the defendants'] possession over eleven months [after the items were stolen]." *McFarland*, 308 A.2d at 595.

Likewise, in *Matthews*, the evidence the Commonwealth proffered to prove that the defendant committed RSP amounted to no more than the defendant's possession of the stolen property. *See Matthews*, 632 A.2d at 572. We explained that

> the Commonwealth established that appellant was in possession of a vehicle stolen three days earlier. However, appellant testified that he rented the vehicle from Charles Lewis for two "rocks" of crack cocaine with a value of $35.00. He further testified that he rented the car to travel to Penn Hills to perform a plumbing job at the home of Edward Thorton and that he was on his way to return the car when the officer stopped him. While appellant did not present the testimony of either Lewis or Thorton, **the Commonwealth did not offer any evidence which contradicted appellant's testimony**. Moreover, the evidence revealed that appellant was cooperative with the officer, and, most significantly, the automobile did not display any physical signs that it had been stolen.

*Id.* (emphasis added).

- 15 -

Conversely, in the instant case, Appellant (1) asked Mr. Ahkmad whether he had surveillance cameras mere days before the burglary; (2) appeared at Mr. Ahkmad's residence the night of the burglary; (3) attempted to sell the bracelet approximately two weeks following the burglary; and (4) had the missing half of Mr. Ahkmad's mounted TV in his garage. This is not a case of mere possession of stolen property; rather, ample circumstantial evidence supported Appellant's convictions. As a result, this case does not fall within the narrow category of cases where the evidence "is so deficient that it does not reasonably support a finding of guilt beyond a reasonable doubt[.]" *In Interest of J.B.*, 189 A.3d at 409. Accordingly, Appellant's sufficiency challenge lacks merit.

In his last issue, Appellant challenges the weight of the evidence supporting his convictions. Appellant's Brief at 28. Appellant claims that the trial court failed to "consider[] the weight argument to any serious extent," because it "deemed the written [Motion for Extraordinary Relief] waived, notwithstanding the fact that the **content** of the motion was revived and presented to the court at sentencing[.]" *Id.* at 30-31 (emphasis in original).

Preliminarily, we consider whether Appellant has preserved his weight claim. To preserve a challenge to the weight of the evidence, a defendant must raise the issue orally or by written motion prior to sentencing, or by post-sentence motion. Pa.R.Crim.P. 607(A)(1-3). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the

evidence issue to the trial court constitutes waiver of that claim." ***Commonwealth v. Juray***, 275 A.3d 1037, 1047 (Pa. Super. 2022) (citation omitted).

Here, both the trial court and Commonwealth argue that a Rule 704(B) motion for extraordinary relief does not preserve a weight claim. ***See*** Trial Court Opinion, 11/18/24, at 17; Commonwealth Brief at 12. Appellant counters that "even though his weight of the evidence claim was raised in a document labeled as a motion for extraordinary relief, it was clearly a weight of the evidence claim[] seeking a new trial[.]" Appellant's Reply Brief at 5.

Rule 704(B) provides as follows:

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) **A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal**.

Pa.R.Crim.P. 704(B) (emphasis added). The comment to the Rule explains that

[p]aragraph (B)(3) is intended to make it clear that a motion for extraordinary relief is neither necessary nor sufficient to preserve an issue for appeal. The failure to make a motion for extraordinary relief, or the failure to raise a particular issue in such a motion, does not constitute a waiver of any issue. Conversely,

- 17 -

**the making of a motion for extraordinary relief does not, of itself, preserve any issue raised in the motion, nor does the judge's denial of the motion preserve any issue.**

*Id.* cmt. (emphasis added).

"This Court has consistently held that we will not allow [Rule 704(B)] motions as a substitute vehicle for raising a matter that should be raised in a post-sentence motion." *Commonwealth v. Askew*, 907 A.2d 624, 627 (Pa. Super. 2006) (citation and quotation marks omitted); *see also Commonwealth v. Wilson*, 227 A.3d 928, 937 (Pa. Super. 2020) (same); *Commonwealth v. Grohowski*, 980 A.2d 113, 115 (Pa. Super. 2009) (same). We have further observed that "[t]he plain terms of Rule 704(B) do not permit the filing of a written motion for extraordinary relief prior to sentencing." *Commonwealth v. Celestin*, 825 A.2d 670, 674 (Pa. Super. 2003); *see also Wilson*, 227 A.3d at 937 ("In order for Rule 704(B) to apply, [] the defendant must make an oral motion." (citation omitted)); *Commonwealth v. Howe*, 842 A.2d 436, 441 (Pa. Super. 2004) (noting the appellant's written motion for extraordinary relief was improper, but deeming the issue raised therein preserved where, after sentencing, the appellant filed a motion for reconsideration of the trial court's denial of his motion for extraordinary relief).

Our recent memorandum decision, *Commonwealth v. Amaro*, 321 A.3d 921 (Pa. Super. 2024) (unpublished memorandum), is analogous to the

case at hand.[12]  In **Amaro**, as in the instant case, the appellant filed a brief indicating that he "intends to" make an oral motion for extraordinary relief prior to sentencing.  **Id.** (unpublished memorandum at 7).  The appellant failed to make an oral motion at sentencing, and did not file post-sentence motions.  **Id.**  On appeal, the appellant sought to challenge the weight of the evidence underlying his convictions.  **Id.** (unpublished memorandum at 6).  Citing **Wilson** and **Askew**, we determined the appellant's written "motion for extraordinary relief was insufficient to preserve [his weight claim] for appeal." **Id.** (unpublished memorandum at 8).

We find **Amaro** persuasive, and conclude its rationale comports with the above-cited authority.  Appellant's Motion for Extraordinary Relief explicitly cited and relied upon Rule 704(B), undercutting Appellant's suggestion that the motion was merely mislabeled.  **See** Motion for Extraordinary Relief, 4/19/22, at 1 (unpaginated).  It is undisputed that Appellant filed no post-sentence motions, and his only reference to the previously-denied Motion for Extraordinary Relief was to state that "just for appellate purposes, I would rest on the written Motion for Extraordinary Relief[.]"  N.T., 8/30/24, at 4 (capitalization modified).  Assuming *arguendo* that this incorporation of his improper, written Motion for Extraordinary Relief constituted a valid oral motion as contemplated by Rule 704(B)(1), it still does not preserve any

_____

[12] This Court's non-precedential memorandum decisions filed after May 1, 2019, may be cited for their persuasive value.  **See** Pa.R.A.P. 126(b).

issues contained within the motion. *See* Pa.R.Crim.P. 704(B)(3); *Juray*, 275 A.3d at 1047; *Wilson*, 227 A.3d at 937. Accordingly, Appellant's final issue is waived.

Even if preserved, Appellant's weight claim would entitle him to no relief. Appellant claims the following points support his conclusion that his convictions constitute a "miscarriage of justice": (1) Mrs. Saleh telling Appellant that the residence was equipped with cameras was more likely to dissuade, rather than encourage, Appellant to burglarize the residence; (2) Mr. Ahkmad's immediate suspicion of Appellant diminished the trustworthiness of his testimony; (3) Mr. Ahkmad's claim that he observed the stolen half of his TV was incredible; and (4) Appellant appearing at the residence while police were still investigating the burglary "militates against Appellant being the perpetrator …." Appellant's Brief at 31-33.

We review a trial court's ruling on a weight challenge for an abuse of discretion. *See Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023); *see also id.* ("[A]n abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." (citation omitted)).

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an

appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and quotation marks omitted; emphasis in original). Further, "the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses[.]" *Commonwealth v. James*, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

In rejecting Appellant's weight challenge, the trial court noted that

it was the trial court's role as the fact-finder[] to assess [Mr. Ahkmad's] credibility[,] to determine the weight to be given to his testimony[,] and resolve any conflicts in his testimony. The trial court found [] Mr. Ahkmad's testimony to be credible[,] because his story had not changed from the night of the burglary to the trial. The trial court weighed the evidence presented, evaluated [Mr. Ahkmad's] testimony and found him credible. Therefore, the verdict was not against the weight of the evidence.

Trial Court Opinion, 11/18/24, at 14-15.

The trial court's findings are supported by the record and its legal conclusion is sound. Appellant essentially requests that we replace the trial court's credibility determinations with our own; this we cannot do. *See Commonwealth v. Watson*, 292 A.3d 562, 570 (Pa. Super. 2023) ("[I]t is

- 21 -

not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." (citation omitted)). Accordingly, if preserved, Appellant's weight challenge would merit no relief.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/17/2025